No. 92-233

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

KARL RAPPOLD and JOHN RAPPOLD,

      Plaintiffs and Appellants,

-v-

ROBERT E. DUROCHER,

      Defendant and Respondent.

APPEAL FROM:  District Court of the Ninth Judicial District,
In and for the County of Teton,
The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          John P. Poston, Gregory W. Duncan, Harrison,
Loendorf & Poston, Helena, Montana

      For Respondent:

          Walter S. Murfitt, Michael S. Becker, Luxan &
Murfitt, Helena, Montana; Robert L. Woodahl,
Choteau, Montana

FILED

MAR 23 1993

Filed: Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: November 12, 1992

Decided: March 23, 1993

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from the Ninth Judicial District, County of Teton, from a judgment for the Respondent (Durocher) as a result of a bench trial. We affirm.

The essential issue on appeal is whether all elements necessary to establish a prescriptive easement across Appellants' (Rappolds) property were proved.

This action concerns Durocher's right to access his property through Rappolds' property. Previously, Durocher's property was acquired by one, R.N. Lear, in 1940 and 1941, from the original homesteaders. The east half of the property was patented in 1923. The west half of the property was patented in 1935. The property was accessed from the Swift Dam road, traveling across tracts owned by Art Lindseth, Fay Lear, and John Rappold. R.N. Lear never lived on the property.

In 1965, Mahlon (Jack) Lear and Deloris Lear acquired the property from R.N. Lear and used the property primarily for livestock grazing. Jack Lear also crossed the property of Art Lindseth, Fay Lear (Jack Lear's brother) and John Rappold.

In 1969, Jack and Deloris Lear obtained an affidavit from their neighbors relative to borrowing money from the Federal Land Bank, which was recorded in 1978. The affidavit was signed by John Rappold (appellants' father), A. D. Lindseth and Fay Lear and read in pertinent part:

> FAY F. LEAR, A. D. LINDSETH and JOHN RAPPOLD, being first duly sworn, upon their oaths depose and say that they own real estate in the vicinity of land owned by

2

MAHLON JOHN LEAR, said land being located in Sections 3, 4, 5 and 9 of Township 27 North, Range 9 West, Teton County, Montana.

That affiants have personal knowledge of the fact that the said MAHLON JOHN LEAR and his predecessors in title and business visitors and guests of same have regularly, openly, and continuously used a trail from the Swift Dam road to gain access to this land, and that said access road has been used without objection, contest or obstruction by anyone for a period of over fifteen years from this date; that the said access road runs southeasterly through Sections 24, 25, 26, 34 and 35 of Township 28 North, Range 9 West in Pondera County, and through Section 3, Township 27 North, Range 9 West in Teton County, entering land owned by MAHLON JOHN LEAR on the east side of the NW1/2SW1/2 of Section 3, Township 27 North, Range 9 West. . . .

In 1979, Jack and Deloris Lear sold the property to Glen and Lola Thoreson, who used the same access trail that R.N. Lear and Jack Lear had used to reach the property. The Thoresons grazed cattle on the land until 1982, when they leased the land to Jerry Lear, Fay Lear's son, to graze Jerry's livestock. The property was leased by Jerry until April of 1988, when the Thoresons sold the property to Durocher.

The Rappolds' father and grandfather bought the property crossed by the contested trail in two purchases. First, John and Karl (appellants' father and grandfather) purchased the Lenor place in 1938. They subsequently purchased the "Gordon place" in 1949. The Rappolds acquired their property through various deeds in 1980 from their father, John Rappold.

The Rappolds filed this action on November 28, 1988 to quiet title to the traversed land against any interest of Durocher. Additional facts will be provided as necessary in the body of the opinion.

3

"Our standard of review of a district court's findings of fact is clear." Rule 52(a), M.R.Civ.P., provides in pertinent part:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. . . .

Keebler v. Harding (1991), 247 Mont. 518, 522, 807 P.2d 1354, 1357. In interpreting this rule, we have adopted the following three-part test:

> First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended the Court may still find that "[A] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed."

Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. (Citations omitted.)

To establish an easement by prescription, the party claiming an easement "must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period. The statutory period is five years." Keebler, 807 P.2d at 1356. (Citation omitted.) See also; Downing v. Grover (1989), 237 Mont. 172, 175, 772 P.2d 850, 852.

> "Open and notorious" is defined as "a distinct and positive assertion of a right hostile to the rights of the owner and must be brought to the attention of the owner." "Continuous" means "it is necessary to have use made often enough to constitute notice of the claim to the potential servient owner." "Uninterrupted" means "use not interrupted by the act of the owner of the land or by voluntary abandonment by the party claiming the right."

<u>Downing</u>, 772 P.2d at 852 (citations omitted). "An Exclusive use means that the claimants' right to use the right of way is independent of a like right of way in another." Cope v. Cope (1971), 158 Mont. 388, 392, 493 P.2d 336, 339. Finally, "[t]o be adverse, the use of the alleged easement must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land; such claim must be known to, and acquiesced in by, the owner of the land." <u>Keebler</u>, 807 P.2d at 1356-1357. (Citation omitted.)

Given the elements of an easement by prescription and the definition of such elements, the trial court concluded that the Durocher had established an easement to his property through the Rappolds' property. We agree.

The Thoreson's owned Durocher's property for approximately ten years, from 1979 to 1988, when they sold the property to Durocher. The Thoresons used their property in various ways during different seasons. They grazed livestock on it, they would go to the property to repair fences and they moved a trailer to the property for overnight stays. They consistently used the trail through Rappolds' to get to their property. They used the disputed trail to access their property for snowmobiling, hunting, Christmas tree gathering, picnics and general enjoyment of the property. They continued to use the property after they leased it to Jerry Lear to graze his cattle.

Mr. Thoreson testified that the Rappolds knew they travelled the disputed trail because he had met both Karl and John at

5

different times on the trail. The Rappolds never prevented him from using the trail. Thoreson claimed he had a right to access his property.

The 1969 affidavit signed by Fay Lear, Art Lindseth and John Rappold provides evidence that Jack Lear's use of the trail was also open, notorious, continuous, uninterrupted and exclusive. The affidavit states that "MAHLON JOHN LEAR and his predecessors in title and business visitors and guests of same have regularly, openly, and continuously used a trail from the Swift Dam road to gain access to this land, and that said access road has been used without objection, contest or obstruction by anyone for a period of over fifteen years from this date. . . ." (Emphasis added.) The affidavit is dated October 18, 1969. The affidavit reflects this use occurred over at least a fifteen year period prior to that date.

The trial court concluded that the language of the affidavit was not consistent with permissive use and that the "affidavit . . . appears to confirm the existence of a prescriptive easement." All elements of prescription have been shown through the testimony of the Thoresons and the 1969 affidavit. The element of adversity is the element of contention here. However, ". . . adverse use is established by presumption if all other elements of the claim are demonstrated." Parker v. Elder (1988), 233 Mont. 75, 78, 758 P.2d 292, 294 (citation omitted). When the other elements have been established, the burden falls upon the other party to show that the use was permissive. Garrett v. Jackson (1979), 183 Mont. 505, 508,

6

600 P.2d 1177, 1179.

In our present case, the use has been shown to be open, notorious, exclusive, continuous and uninterrupted at least through the ownership of Jack Lear and Glen Thoreson, Durocher's predecessors in interest. This establishes the presumption of adversity that the Rappolds must overcome.

We conclude that the Rappolds have not met their burden of demonstrating that Durocher and his predecessors' use was permissive. Although Karl Rappold testified that he had given Glen Thoreson and his son, Gary permission to cross his property, Glen and Gary Thoreson testified that they never sought permission, nor were they given permission, to use the trail. The trial court concluded that he found "the testimony of Glen Thoreson, a disinterested third party, more credible than that of plaintiffs and members of their family. Glen Thoreson never asked for or received permission from plaintiffs to use the road."

The Rappolds provided nothing more than their own statements to show that the use of the road was permissive. We observe that "[d]ue regard is given the opportunity of the district court to judge the credibility of witnesses. . . and resolve conflicts or inconsistencies in testimony." Thomas v. Barnum (1984), 211 Mont. 137, 143-144, 684 P.2d 1106, 1110. (Citations omitted.)

The element of adversity also is present in Glen Thoreson's testimony that he did not understand that there were any limitations on using the road at any time during the year nor any limitations for any use he wanted to make of the road. Also, he

7

testified that when he sold the property to Durocher he told Durocher that he had a right to use the trail based upon the "written easement" (1969 affidavit). Thoreson believed he had a legal right to go to his property based on the affidavit and the word of the real estate man who worked with Jack Lear when Jack sold the property to Glen Thoreson. Finally, Glen Thoreson testified that he did not feel that he had to ask for permission to access his property. The trial court concluded that "Glen Thoreson was told when he purchased the property from Lear that there was an easement that went with it. The 1969 affidavit was the basis for this representation. This information was passed along to Defendant Durocher." Thoreson exercised his use of the trail as an adverse claim of right, not as a license revocable at the Rappolds' pleasure.

We conclude that the trial court's judgment that Durocher has a prescriptive easement through Rappolds' property is supported by substantial credible evidence, that the trial court did not misapprehend the effect of the evidence, and that the court was not clearly erroneous. AFFIRMED.

_____
Justice

We Concur: _____

_____
Chief Justice

_____

8

_William E Hunt Sr_

_Thomy Theawils_
___Justices___

March 23, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Gregory W. Duncan & John P. Poston
Harrison, Loendorf & Poston
2225 Eleventh Ave., Ste. 21
Helena, MT   59601

Michael S. Becker & Walter S. Murfitt
Luxan & Murfitt
P.O. Box 1144
Helena, MT  59624-1144

Robert L. Woodahl
Attorney at Law
P.O. Box 162
Choteau, MT   59422-0162


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
   Deputy