No.  95440

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

V. MARK RAFANELLI,

      Plaintiff and Appellant,

  v.

HAL J. DALE, VIRGINIA LEE GABIG,
and PAULETTE DALE-HUTCHEON,

      Defendants and Respondents.

FILED

AUG 09 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fifth Judicial District,
               In and for the County of Madison,
               The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          John S. Warren; Davis, Warren & Hritsco
          Dillon, Montana

      For Respondents:

          Loren Tucker; Tucker Law Firm,
          Virginia City, Montana

Submitted on Briefs:  May 2, 1996

Decided:  August 9, 1996

Filed:

_____
               Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

V. Mark Rafanelli (Rafanelli) appeals from a judgment of the Fifth Judicial District Court, Madison County, that Hal Dale and his daughters, Virginia Lee Gabig and Paulette Dale-Hutcheon, (the Dales) have an easement by prescription across a portion of his property. We affirm.

The following issues are raised on appeal:

1. Did the District Court err in concluding that the Dales had acquired a prescriptive easement?

2. Did the District Court err in not concluding that the Dales' prescriptive easement had been extinguished?

3. Did the District Court abuse its discretion in admitting Exhibit 29 into evidence?

The Dales are the owners of approximately 43 acres of land located in Beall Canyon, Madison County, Montana. The Dales' property is bordered on the north, west, and south by the Whiterock Ranch, currently owned by Rafanelli (see diagram). The east side of the Dales' property abuts Forest Service land. The only means of accessing the Beall Canyon property is across land belonging to the Whiterock Ranch.

Hal Dale purchased the Beall Canyon acreage in partnership with his brother, Claude Dale, in 1971. The previous owners were Julian Strawn and his heirs Pearl Strawn, Alice Pasley and Frances Salveson (the Strawns).

Claude Dale died on October 3, 1990. Pursuant to a provision contained in Hal and Claude Dale's partnership agreement, Hal and his two daughters jointly purchased Claude's one-half interest in

2

the property from Claude's widow in February of 1992.

The Whiterock Ranch was purchased by Knight Carson and his family (the Carsons) in 1972. The Carsons sold the ranch to June and Ronald Thomas (the Thomases) in December of 1986, and the Thomases subsequently sold the ranch to Rafanelli in 1991.

Three routes across the Whiterock Ranch provide access to Beall Canyon. Route A leads south and east to the main buildings of the Whiterock Ranch, then west nearly to Beall Creek and southeast, roughly parallel to the creek, to the Dales' property in Beall Canyon. Route B travels south from the Waterloo town dump along the west side of Section 2, Township 2 South, Range 5 West, MPM; turns east through a gate onto the Whiterock Ranch; crosses Beall Pasture and Beall Creek; and then follows the creek into the canyon. Route C begins at the Waterloo town dump, travels east, then southeast to Beall Creek and along the creek into Beall Canyon. The Dales have used all three access routes across Whiterock Ranch since purchasing the Beall Canyon property in 1971.

In 1992, Rafanelli brought an action to quiet title to the Whiterock Ranch property in which he requested the District Court to declare that the Dales had no right, title, or interest in any easement across Whiterock Ranch. The Dales counterclaimed, asserting that they had acquired prescriptive easements over Routes A and B. After a bench trial, the District Court concluded that the Dales had an easement by prescription over access Route B and entered judgment accordingly. Rafanelli appeals.

3

STANDARDS OF REVIEW

We review a district court's findings of fact to determine whether they are clearly erroneous, giving "due regard . to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52(a), M.R.Civ.P. In determining whether a court's findings of fact are clearly erroneous, we apply a three-part test:

> First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that "[A] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the [C]ourt with the definite and firm conviction that a mistake has been committed."

Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287 (citations omitted). We review conclusions of law to determine whether the district court's interpretation of the law is correct. Public Lands Access Ass'n, Inc. v. Boone and Crockett Club Found., Inc. (1993), 259 Mont. 279, 283, 856 P.2d 525, 527.

DISCUSSION

1. Did the District Court err in concluding that the Dales had acquired a prescriptive easement across Whiterock Ranch?

Rafanelli contends that the preponderance of the evidence in the record does not support the District Court's findings that the Dales had established adverse and uninterrupted use of Route B. He also argues 'that substantial credible evidence before the District

4

Court proved that the use of Route B was permissive, rather than adverse, or was on the basis of neighborly accommodation. We note at the outset that Rafanelli's arguments ignore our standard of review of a district court's findings of fact. It is within the province of the trier of fact to weigh the evidence and assess the credibility of witnesses and we will not second-guess those determinations. Double AA Corp. v. Newland & Co. (1995), 273 Mont. 406, 494, 905 P.2d 138, 142. Moreover, we will uphold a district court's findings when there is substantial evidence to support them even when there is also evidence supporting contrary findings. Wiesner v. BBD Partnership (1993), 256 Mont. 158, 161, 845 P.2d 120, 122.

The District Court found that the Dales' predecessors used various routes across Whiterock Ranch without permission for many years. However, the bulk of its findings related to the Dales' own use of the access routes after they purchased the Beall Canyon property in 1971 and, with regard to this period, the court specifically found that the Dales' use of Route B met the elements necessary to establish a prescriptive easement. Given that Rafanelli challenges findings relating to only two of the elements, we scrutinize the record to determine whether it contains sufficient evidence to support the court's findings that the Dales' use of Route B after their purchase of the Beall Canyon property in 1971 was adverse and uninterrupted.

A prescriptive easement is created by operation of law in Montana. Swandal Ranch Co. v. Hunt (Mont. 1996), 915 P.2d 840,

5

843, 53 St.Rep. 361, 362. The party claiming the easement bears the burden of establishing "open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the . statutory [five-year] period." Public Lands, 856 P.2d at 527 (quoting Keebler v. Harding (1991), 247 Mont. 518, 521, 807 P.2d 1354, 1356) In order to show that the use of a claimed easement is adverse, a claimant must prove that the use is "exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land; such claim must be known to, and acquiesced in by, the owner of the land." Rappold v. Durocher (1993), 257 Mont. 329, 332, 849 P.2d 1017, 1019 (citation omitted).

When Knight Carson and his family purchased the Whiterock Ranch in 1972, he noticed the Dales using Route A--the road leading past the main ranch buildings--to reach Beall Canyon. Carson consulted his attorney, who sent a letter to Hal Dale on September 27, 1972. The letter informed Dale that the Whiterock Ranch corporation stockholders had no desire to grant any easements across ranch property and that any future agreements regarding access would require approval by the stockholders. The letter also related that a portion of Route A would be plowed under to create a section of irrigated crop land.

The Dales' attorney responded by letter dated October 16, 1972, stating that

> [t]he Dales do not wish to force their way through anyone's property if a road has not been established and even if it has, if another route of access can be used, then they certainly will comply with the wishes of your

6

**client.**

The letter indicated the Dales' belief they had the right, and were affirmatively asserting that right, to cross the Whiterock Ranch by specifically referencing, and attaching a copy of, a document referred to as the Holbert affidavit.

The Holbert affidavit was executed in 1967 by Howard S. Holbert, A. W. Purvis, and Otto C. Nolte, all of whom were acquaintances of the Strawn family, and was recorded with the Madison County Clerk and Recorder. The affidavit identifies the Beall Canyon property and states that the Strawns had used a certain road to access the property for more than twenty years. The Holbert affidavit neither clearly describes the location of the road it references nor indicates that the Strawns were claiming a right over that access adverse to any landowner. Hal Dale testified that, when he and his brother purchased the Beall Canyon property, they believed that they had a right to access their property across the ranch based on this affidavit and comments made to them by the Strawn **family.**

After the exchange of letters in 1972, the Dales continued to use both Route A and Route B to access the Beall Canyon property; they did not contact the Whiterock Ranch shareholders to make arrangements or ask permission to use either road. The Carsons eventually plowed up a portion of the Route A road in late 1972 and, thereafter, the Dales primarily used Route B to access Beall Canyon, although a ranch lane still provided access through the area of the ranch buildings.

7

In July of 1973, the Carsons sent the Dales' attorney another letter regarding the Dales' accessing Beall Canyon via the ranch and complaining of the amount of traffic through the ranch. The letter informed the Dales that any unauthorized traffic across Whiterock Ranch property would be considered trespass and that the Carsons were putting "no trespassing" signs up at all points of access to the ranch. Additionally, the Carsons intended to place, and eventually did place, an advertisement in the local newspaper notifying the general public of the closure of all roads across the ranch property. The letter stated that the Dales would need to make specific arrangements with Knight Carson or his attorney for access to Beall Canyon across Whiterock Ranch. If such arrangements were not made, the Carsons would consider any use of roads across the ranch by the Dales or anyone else a trespass. The Dales continued to cross ranch property on Route B to reach Beall Canyon, did not contact the Carsons to make arrangements to do so, and completely ignored the posted "no trespassing" signs. This use by the Dales continued until the trial on Rafanelli's quiet title action.

The Dales' continuous use of Route B to reach Beall Canyon, their ignoring two requests from the Carsons that they obtain permission to use the road, and the failure of the Carsons to obstruct or interrupt such use by the Dales, are evidence of a use hostile and adverse to the Carsons' ownership. It is clear that the Carsons knew of the Dales' use of Route B and that they acquiesced in such use. Although the Carsons requested that the

8

Dales receive permission before using the road, they did nothing affirmative to enforce that request or otherwise stop the Dales from crossing Whiterock Ranch. The Dales notified the Carsons of their claim that they had a right to cross Whiterock Ranch in their October 16, 1972, letter to the Carsons and reinforced that claim by continuing to use Route B without asking for permission. Additionally, the Dales' use of Route B continued thereafter throughout the entire time that the Carsons, the Thomases, and Rafanelli owned Whiterock Ranch, a period approximately four times longer than the statutory five years needed to establish a prescriptive easement.

We conclude, therefore, that substantial evidence supports the District Court's finding that the Dales had established the elements of a prescriptive easement, including the adverse and uninterrupted use elements.

PERMISSIVE USE

Rafanelli advances a variety of arguments in support of his position that the Dales' use of Route B was permissive rather than adverse and that the District Court erred in finding otherwise. We address each of his arguments in turn.

Rafanelli argues that the Carsons granted express permission to the Dales to improve and use Route B when the Carsons plowed up part of Route A in 1972 and, as a result, the Dales' use of Route B cannot be adverse. The record reflects that, at some point in 1973, the Dales improved Route B by grading the road. Knight Carson stated that the Dales did so with his permission pursuant to

9

**a meeting** between himself and Claude Dale. Carson testified that, during the **meeting** with Claude, he granted permission to the Dales to improve and use Route B, in place of Route A, as long as the Dales paid for all maintenance of the road and installed a locked gate at the point where the road entered the Whiterock Ranch. Carson's son, Christopher, provided similar testimony.

Hal Dale claimed to have no knowledge of such a conversation between Claude and the Carsons. He testified that, even if a conversation had occurred, his brother would not have asked for permission to improve Route B because the Dales had always believed they had the right to use all of the various access routes to Beall Canyon across the Whiterock Ranch. According to Hal, the Dales simply decided they wanted to improve the Route B access and went ahead with the project without consulting the Carsons.

**Sometime** in 1974, the Dales installed a bridge over Beall Creek at the point where Route B crossed it because a flood had washed out the ford where the Dales usually were able to drive across the creek. Again, the Carsons claimed that Claude Dale met with them to ask their permission to build the bridge, while Hal Dale asserted that permission was not requested.

The District Court found the Dales' testimony that Claude did not request permission to use and improve Route B to be more credible than the Carsons' testimony that they granted permission and, as a result, rejected the Carsons' version of the meetings. The court determined that Claude Dale, being "an experienced mining entrepreneur," would not have requested permission to use an access

10

route which his family and their predecessors already had been using under a claim of right for many years. Credibility determinations are within the province of the trier of fact and "[w]e will not second guess the district court's determination regarding the strength and weight of conflicting testimony." Double AA Corp., 905 P.2d at 142.

Moreover, the undisputed fact that the Dales paid all the costs of improving, building and maintaining Route B, the bridge, and the gate at the entrance to the Whiterock Ranch further supports the District Court's finding that the Dales' use of the road was not permissive. Regular maintenance of a road by the party asserting a prescriptive easement is evidence of adverse, rather than permissive, use. Swandal Ranch Co., 915 P.2d at 844.

Although Rafanelli points to evidence of record which might support a finding that the Dales' use of Route B was permissive, we do not review findings to determine whether evidence supports contrary findings. Wiesner, 845 P.2d at 122. As discussed above, substantial credible evidence of record supports the District Court's finding that the Dales' use of Route B was adverse rather than permissive

Rafanelli also contends that the Dales admitted the permissive nature of their access. This contention is based on negotiations between himself and Hal Dale in 1991 regarding Rafanelli's desire to purchase Claude Dale's partnership interest in the Beall Canyon property.

When Rafanelli began dealing with the Thomases in late 1990

11

about purchasing the Whiterock Ranch, he became aware of the Dales' use of roads across the ranch to access their Beall Canyon property. Rafanelli testified that he knew of the Dales' use of the roads and requested a title company to investigate whether there was any record of an easement granted to the Dales. The title search revealed the Holbert affidavit but did not locate any record of an easement being granted to the Dales. When Rafanelli realized that the Dales had no deeded easement to cross Whiterock Ranch, he approached Hal Dale to discuss the possibility of purchasing Claude Dale's interest in the Beall Canyon property. Rafanelli regarded this proposed partnership as a solution to what he considered a problem with the Dales' access; if Rafanelli were a partial owner of the Beall Canyon property, any potential disputes over the access would be resolved without Rafanelli being required to grant or recognize an easement across Whiterock Ranch for access to the canyon. Rafanelli felt that the acquisition by the Dales of an easement over Whiterock Ranch would have a negative impact on the value of the ranch.

Rafanelli and Hal Dale arranged for an appraisal of the Beall Canyon property during their negotiations. In a letter to Hal Dale dated February 13, 1991, the appraiser noted that there was no deeded access to the Beall Canyon property and that access had always been with permission of the owners of Whiterock Ranch; in his opinion, however, there was a good chance of establishing a prescriptive easement. Rafanelli's attempted purchase of Claude Dale's partnership interest in the Beall Canyon property was never

12

completed.

Rafanelli argues that, because Hal Dale neither objected to the appraiser's characterization of the access as permissive nor made corrections to that statement in the appraisal, he impliedly admitted that access was permissive. Rafanelli also asserts, in this regard, that the mere fact of the negotiations between himself and Hal Dale evidences the Dales' knowledge that access was permissive. He argues that Hal Dale would not have entered into the negotiations if he thought there was a clear right to access the Beall Canyon property via Whiterock Ranch and that the negotiations were conducted in order to solve the problem of the access.

The District Court found that Hal Dale's actions regarding the appraisal letter and the purchase negotiations with Rafanelli were not inconsistent with a claim of a prescriptive easement. Rather, the court determined that Hal merely was attempting to solidify his right to use the access without going through the time and expense of litigation to establish a prescriptive easement. "[T]his Court may not substitute its judgment for that of a district court in making a finding based to a large extent on credibility and weight of the evidence." In re Marriage of Boyer (1995), 274 Mont. 282, 288, 908 P.2d 665, 668. We conclude that the District Court's finding that the Dales did not admit that the access was permissive was supported by substantial evidence.

Rafanelli's final argument regarding permissive use is that the evidence on which the District Court relied in finding that the

13

use was adverse rather than permissive was patently incredible. Specifically, Rafanelli contends that the District Court erred in relying on Hal Dale's testimony because that testimony was inconsistent with his earlier deposition **testimony** and because Hal admittedly fabricated a scene for purposes of taking a photograph which was later admitted into evidence.

The District Court observed that Hal Dale's credibility was questionable because of his somewhat contradictory conduct over the years, but stated that it did not doubt his honesty or sincerity. The court specifically found that Hal's overall behavior through the years was not inconsistent with his assertion that the Dales' use of the access to the Beall Canyon property was adverse to the owners of the Whiterock Ranch.

We give due regard to the opportunity of the trial court in a nonjury trial to determine the credibility of witnesses and to resolve inconsistencies in the testimony. Rappold, 849 P.2d at 1020. We do so because the trial court is in a better position than this Court to observe the demeanor, and assess the credibility, of witnesses. Double AA Corp., 905 P.2d at 142. Additionally, even if a portion of a witness' testimony is shown to be false or unreliable, the trier of fact need not discount the entirety of that witness' testimony. Kis v. Pifer (1978), 179 Mont. 344, 350, 588 P.2d 514, 517-18.

Here, the District Court carefully considered Hal Dale's testimony and actions and, having had the opportunity to observe his demeanor, accepted his testimony regarding the adverse nature

14

of the Dales' use of Route B to access their Beall Canyon property. We conclude that the District Court did not err in relying on the testimony of Hal Dale.

NEIGHBORLY ACCOMMODATION

Rafanelli next advances two arguments relating to his position that the Dales' use of Route B was not adverse because it was based on neighborly accommodation. It is well-settled that a prescriptive easement cannot be established where use of a neighbor's land is based on neighborly accommodation or courtesy because such use is not adverse to the owner of the land. Public Lands, 856 P.2d at 528.

Rafanelli contends that the statements in the Carsons' 1972 and 1973 letters show that the Carsons allowed the Dales to use the access on a neighborly accommodation basis. We disagree. The letters clearly state that access would be permitted only if the Dales sought permission from, and made arrangements with, the Carsons to use the roads. To the extent the letters relate to the question of neighborly accommodation, they are evidence tending to show that the Dales' access was not by way of neighborly accommodation, because neighborly accommodation does not require permission at every passing. See Lemont Land Corp. v. Rogers (1994), 269 Mont. 180, 186, 887 P.2d 724, 728.

Rafanelli also contends, in this regard, that the District Court misinterpreted June Thomas' testimony insofar as it related to adverse use or neighborly accommodation when it found that she felt the Dales had a right to access Beall Canyon across Whiterock

15

Ranch and that the Thomases did not attempt to control the Dales' access. June Thomas testified by deposition that when she and her husband purchased the Whiterock Ranch in late 1986, the Dales were primarily using Route B to reach Beall Canyon. She also testified that she and her husband never tried to restrict the Dales' use of the access road and, although she thought the Thomases could control where the access was, she believed the Dales had the right to cross the ranch to reach their Beall Canyon property.

Although the District Court did not specifically find that June Thomas' testimony either supported or did not support its finding that the Dales use of Route B was adverse, the court made note of those portions of her testimony indicating that she and her husband thought the Dales had the right to cross Whiterock Ranch to reach Beall Canyon and that the Thomases did nothing to control the Dales' access. Rafanelli contends that June Thomas' testimony was consistent with his theory that use of the road was by neighborly accommodation and that the District Court erred when it failed to find that her testimony supported that theory.

The District Court found that the Dales' use of Route B had been adverse to the Carsons' ownership, rather than permissive, since 1972. Therefore, the Dales had established the statutory five-year period of adverse use well before the Thomases purchased Whiterock Ranch in 1986. As a result, it is not relevant whether the Thomases thought the Dales' use of Route B was by permission, by neighborly accommodation or by right.

16

## THE HOLBERT AFFIDAVIT AND PRE-1971 USE

Rafanelli next argues that the District Court erred in relying on the Holbert affidavit as evidence of a claim of right to access to Beall Canyon across Whiterock Ranch. The District Court found that the affidavit should have put any post-1967 owners of the Whiterock Ranch on constructive notice that an adverse claim of access across the ranch to Beall Canyon was being asserted. Although Rafanelli did not object to the admission of the affidavit into evidence, he challenges the court's finding regarding its significance, arguing that the affidavit itself cannot, and does not, establish the elements of prescription. While Rafanelli is correct in this regard, the District Court did not determine that the affidavit proved the elements of prescription. Rather, the court used the affidavit as one piece of evidence supporting the Dales' assertion of a claim of right to use the access routes.

When establishing a prescriptive easement, the element of adversity is proven by showing that the use of the easement was exercised under a claim of right. Rappold, 849 P.2d at 1019. A claim of right to an easement "must be known to, and acquiesced in by, the owner of the land." Rappold, 849 P.2d at 1019.

Although the Holbert affidavit does not speak specifically in terms of a claimed right to access Beall Canyon across Whiterock Ranch property, the Dales relied on the affidavit in asserting their claim of right to use the access roads after they purchased the Beall Canyon property in 1971. The October 16, 1972, letter from the Dales' attorney to the Carsons notified the Carsons of the

17

existence of the Holbert affidavit and made it known to the Carsons that the Dales claimed a right to the access. The Carsons thereafter acquiesced in that claim of right when, although requesting the Dales to arrange for permission to use the access, they took no affirmative action to stop the Dales from crossing Whiterock Ranch.

The District Court stated that the recorded Holbert affidavit was constructive notice to all post-1967 owners of Whiterock Ranch that a claim of right to access Beall Canyon via the ranch was being asserted. The Dales gave the Carsons actual notice that they were asserting a claim of access across the ranch by sending the Carsons a copy of the affidavit. The District Court neither found nor implied that the Holbert affidavit supported any element of a prescriptive easement other than a claim of right to use the access road in question.

Rafanelli also advances a variety of arguments asserting that the District Court erred in finding that pre-1971 use of the access routes by the Dales' predecessors was adverse. We determined above that the District Court's finding that the Dales established that their use of Route B had been adverse to the Carsons' ownership of Whiterock Ranch since 1972 is supported by substantial credible evidence. Because the Dales proved that their use of the road had been adverse from 1972 forward, it is not necessary to determine whether pre-1971 use of the roads by the Dales' predecessors was adverse. Thus, we decline to address Rafanelli's arguments regarding pre-1971 use of the access routes.

INTERRUPTED USE

Although the majority of Rafanelli's arguments are directed toward whether the District Court erred in finding that the Dales' use was not permissive, he also makes vague assertions that the Dales did not prove the element of uninterrupted use. This assertion is apparently based on the Carsons' act of plowing up a portion of Route A in 1972 and allegedly giving the Dales permission to use Route B thereafter.

The District Court found that the Dales ceased to use Route A after 1972, and, as a result, the court did not grant the Dales a prescriptive easement over that road. Thus, any act of the Carsons which may have interrupted the Dales' use of Route A is not relevant to whether the Dales established an easement by prescription over Route B.

In addition, the District Court rejected Rafanelli's position, advanced through the Carsons' testimony, that Claude Dale sought-- and the Carsons gave--permission to use Route B in 1972. Indeed, as discussed above, the District Court found that the Dales had been using Route B without permission and adversely at least since the Carsons purchased Whiterock Ranch in 1972 and substantial credible evidence supports those findings. Moreover, there is no evidence of record reflecting any post-1972 act by the Carsons, the Thomases, or Rafanelli himself which interrupted the Dales' adverse use of Route B to access their Beall Canyon property until Rafanelli locked the gate at the entrance to the ranch in October of 1991. Even then, however, the Dales simply cut the lock off the

19

gate and continued to use the road. Moreover, Rafanelli's act of locking the gate occurred long after the running of the statutory five-year period for establishing a prescriptive easement. We conclude that the District Court's finding that the Dales established uninterrupted use of Route B for the statutory five-year period is supported by substantial credible evidence.

In summary, the Dales and Rafanelli presented substantial and conflicting evidence in this case, primarily about the adverse versus permissive nature of the use of Route B across the Whiterock Ranch to access the Dales' Beall Canyon property. "[A] district court sitting as a fact finder, is in the best position to determine whether use was permissive or adverse." Swandal Ranch Co., 315 P.2d at 845 (citation omitted). We conclude that the District Court's findings of fact that the Dales had established the elements of a prescriptive easement over Route B across the Whiterock Ranch to access their Beall Canyon property are supported by substantial evidence and are not otherwise clearly erroneous. We hold, therefore, that the court did not err in concluding that the Dales had acquired a prescriptive easement over Route B.

2. Did the District Court err in not concluding that the Dales' prescriptive easement had been extinguished?

Rafanelli argues that, even if a prescriptive easement existed at one time over either Route A or Route B, that easement was extinguished when the Carsons plowed up a portion of Route A in 1972 and gave the Dales permission to use Route B instead. A servitude may be extinguished by the destruction of the servient tenement or an act by the owner of the servitude, or with his

20

consent, which is incompatible with the nature of the servitude. Section 70-17-111, MCA.

> We have held, on the basis of that statute, that if a prescriptive easement exists, subsequent acts inconsistent with the claim by prescription, support the conclusion that the prescriptive easement has been extinguished.

Public Lands, 856 P.2d at 531-32.

The District Court found that the Dales had stopped using Route A in 1972 and, therefore, no easement was established over that road. Because the District Court did not grant the Dales a prescriptive easement over Route A and the Dales did not appeal that determination, it is not necessary to address whether any easement over Route A was extinguished by the Carsons' act of plowing up a portion of that road.

Rafanelli relies on Public Lands for the proposition that acquiescence in a change of the use of an easement extinguishes that easement and argues that, by allowing the Carsons to move the access from Route A to Route B, the Dales acquiesced in a change of use which extinguished any prior easement. In Public Lands, we concluded that, if an easement had existed, it would have been extinguished by the land owner's act of blocking the road and creating a walk-in only policy. Public Lands, 856 P.2d at 532. Such a change in use, when cooperated with and adhered to by the owner of the easement, is inconsistent with a claim of a prescriptive easement and works to extinguish it. Public Lands, 856 P.2d at 532.

Rafanelli's reliance on Public Lands is misplaced. The Dales

21

did not acquiesce in any change in their use of Route B. The record reflects that the Dales had used Route B regularly since purchasing the Beall Canyon property in 1971 and continued that use after the Carsons purchased Whiterock Ranch in 1972. The obliteration of Route A did not affect or alter the Dales' continued use of Route B and the District Court found that, contrary to their assertions, the Carsons did not "permit" the Dales to relocate the access from Route A to Route B. Thus, the act of plowing under a portion of Route A did not create a change in the Dales' use of Route B similar to the change in use which occurred in Public Lands. The only change that transpired here was that the Dales rarely, if ever, used Route A from that time on.

Moreover, even if there had been an act by the Carsons during 1972 which was inconsistent with the Dales' claim of a prescriptive easement, the Dales' continued adverse use of Route B for more than five years after that time would have created a new prescriptive easement over Route B. See Glenn v. Grosfield (1995), 274 Mont. 192, 196, 906 P.2d 201, 204. We held in Glenn that, if a change in location or modification of the use of an easement occurs and the owner of the previous easement uses the modified easement in the same manner for the statutory five-year period, a new prescriptive easement over the modified route is established. Glenn, 906 P.2d at 204. The District Court found that the Dales' use of Route B was adverse to the Carsons and the subsequent owners of Whiterock Ranch since 1972. Thus, even if a previous easement over that route had been extinguished, the Dales would have acquired a new

22

prescriptive easement after five years of adverse use. <u>Glenn</u>, 906 P.2d at 204.

We hold that the Dales' prescriptive easement over Route B was not extinguished by the Carsons' plowing up of Route A in 1972 and that the District Court was correct in not concluding that the easement was extinguished.

3. Did the District Court abuse its discretion in admitting Exhibit 29 into evidence?

Exhibit 29 consisted of three hand-written pages of notes dated August 8, 1973, allegedly written by Claude Dale during or immediately after a telephone conversation he had with his brother Hal. The notes refer to comments Claude made to Hal regarding access to their Beall Canyon property.

As foundation for the exhibit, Hal Dale testified that the notes were in Claude's handwriting, that Claude was in the habit of always making notes of his telephone conversations, and that Hal had found the notes with other possessions that Claude had brought with him when he moved to the Beall Canyon property after retiring from his work with a mining corporation. The Dales offered Exhibit 29 under the business records exception, as well as other exceptions, to the hearsay rule. Rafanelli objected to the exhibit on the grounds that it was hearsay, that the Dales had failed to properly authenticate it, and that it did not qualify under any of the exceptions to the hearsay rule.

The District Court admitted Exhibit 29 under Rule 803 (6), M.R.Evid., the business records exception to the hearsay rule. It quoted the notes in its findings of fact and relied on them as part

23

of the evidence showing that Claude Dale did not request permission from the Carsons to improve and use Route B or to build the bridge over Beall Creek. The court also found that the notes were indicative of adverse use by the Dales.

A district court has broad discretion in determining whether evidence is relevant and admissible. We will not reverse such a determination unless the court has abused that discretion. Galbreath v. Golden Sunlight Mines, Inc. (1995), 270 Mont. 19, 22, 890 P.2d 382, 384.

Under Rule 803(6), a document "kept in the course of a regularly conducted business activity" may be admitted into evidence, even though it is hearsay, when it is "the regular practice of that business activity" to create the document. Although Hal Dale testified that Claude made notes of all of his telephone conversations, the record does not reflect that Exhibit 29 was made by Claude in the course of any business activity; indeed, a review of the notes establishes that they were in the nature of a memorandum made for personal use. While district courts have broad discretion in admitting evidence, the record before us is totally lacking in foundation for admission of Exhibit 29 as a business record under Rule 803(6), M.R.Evid. Thus, the District Court abused its discretion in admitting Claude Dale's notes under the business records exception to the hearsay rule.

The Dales also argued, however, that Exhibit 29 was admissible under the so-called state of mind exception to the hearsay rule. We recently have discussed state of mind evidence, distinguishing

24

between hearsay state of mind evidence, admissible only under an exception to the hearsay rule, and nonhearsay state of mind evidence. In State v. Losson (1993), 262 Mont. 342, 348, 865 P.2d 255, 259, we determined that whether such evidence is hearsay or not depends on whether the statement is direct evidence proving the declarant's state of mind or only circumstantial evidence of the declarant's state of mind.

> If the evidence circumstantially proves the declarant's state of mind, then the evidence is not offered to prove the truth of the matter asserted and the evidence is not hearsay.

> Alternatively, when the evidence directly proves the declarant's state of mind, the evidence is introduced to prove the truth of the matter asserted and is hearsay.

Losson, 865 P.2d at 259. For example, if a person said "X threatened to kill me," the statement is circumstantial evidence of that person's state of mind regarding X to the extent it is used only to show that the person was afraid of X and not to prove that X actually threatened the person. As such, the statement is not hearsay as defined in Rule 801(c), M.R.Evid., and it is generally admissible if relevant. See Rule 402, M.R.Evid. Conversely, if the person said "I hate X," the statement directly shows the person's feelings about X and is offered to prove that the person hates X. In that case, the statement is hearsay under Rule 801(c), M.R.Evid., and is admissible only if it comes within an exception to the hearsay rule.

The District court's finding of fact #14 contains the following quote from Claude Dale's notes of his telephone

25

conversation with Hal on August 8, 1973, in which he advised Hal:

> establish a road that we want to use and go ahead with its use. I advised Hal to make no commitment to Carson. Go up established road--cut lock or fence if necessary. Carson has changed road thru [sic] farm and is trying to get it established that this new road is a private road. This not so--just because he changed it. county maintenance on the ranch road fives [sic] better access to us than any other. I think, anyway, don't commit us to anything and keep all avenues open til [sic] we move there.

The District Court used Claude Dale's notes in support of its finding that Claude did not request permission from the Carsons to use Route B. In other words, the court's finding was that the notes reflected Claude's state of mind that the Dales had the right to use the access roads regardless of what the Carsons did or said about such use. Thus, to the extent that the District Court admitted Claude's statements to show that his state of mind was such that he would not have asked permission from the Carsons to use Route B, the statements are not hearsay. The statements were not offered to prove that Claude told Hal to cut the lock or fence; nor were they offered to prove that the Carsons changed the road or that Claude Dale told Hal not to commit to anything about the access. The statements circumstantially indicated Claude's state of mind both about the Carsons and about the Dales' right to use the road, and they were offered to show that Claude did not seek permission from the Carsons to use Route B in exchange for maintaining the road and installing a locked gate. To this extent, Exhibit 29 is not hearsay under Losson

Rafanelli's objection to Exhibit 29 was limited to the hearsay nature of the evidence and its lack of admissibility under any

26

**exception to** the hearsay rule. Having determined that the exhibit was not hearsay to the extent it was offered to show Claude's state of mind regarding the Dales' right to use Route B, we conclude that the District Court did not abuse its discretion in admitting Exhibit 29 for that purpose.

The District court also found that Claude's notes were "persuasive evidence of adverse use not permissive." In making this finding, the court went beyond using the notes as circumstantial evidence of Claude's state of mind regarding the Dales' right to use Route B and used Claude's statements, such as that he had told Hal to "establish a road that we want to use and go ahead with its use" and to "cut lock or fence if necessary," as directly showing that the Dales' use of the access was hostile and adverse to the Carsons. In doing so, the court accepted the contents of the statements as being true and, for that purpose, the notes are hearsay. Therefore, the notes are inadmissible unless they come within an exception to the hearsay rule. As noted above, the Dales argued that the notes were admissible under the "state of mind" exception contained in Rule 803(3), M.R.Evid.

Under Rule 803(3), M.R.Evid., a statement is not excluded by the hearsay rule if it is

> [a] statement of the declarant's then-existing state of mind, **emotion,** sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed.

In Losson, we concluded that a declarant's statements to a Naval Reserve officer that he thought his wife was going to kill him and

27

that he was afraid of her were hearsay because they were introduced as direct evidence to prove that the declarant was afraid of his wife. We concluded, however, that the statements met the Rule 803(3), M.R.Evid., exception to the hearsay rule because they were offered to show the declarant's state of mind at the time he sought to reenlist in the Navy. Losson, 865 P.2d at 259.

In the present case, the notes do not come within the Rule 803(3) state of mind exception to hearsay because the court interpreted the statements to be evidence of adversity, rather than an explanation of or reason behind any of Claude's actions. In order to fall under the state of mind exception to the hearsay rule, the statements must be used to show "the declarant's then-existing state of mind, emotion, sensation, or physical condition

" Rule 803(3), M.R.Evid. In Losson, the hearsay statement met the Rule 803(3) exception because it explained the reason behind the declarant's subsequent actions. Here, the court did not connect Claude's statements to a state of mind reason for any of Claude's actions. Rather than finding that Claude told Hal to do certain things or that Claude himself did certain things because Claude thought their use of Route B was adverse to the Carsons, the court simply found that the statements themselves evidenced adverse use. We conclude that the District Court abused its discretion in admitting Claude Dale's notes as direct evidence that the Dales' use of Route B was adverse rather than permissive.

The question remains, however, whether the District Court's error in admitting Exhibit 29 for this purpose was reversible

28

error.  "No civil case shall be reversed by reason of error which would have no significant impact upon the result.  Where there is no showing of substantial injustice, the error is harmless and may not be used to defeat the judgment."  Paternity of W.L. (1995), 270 Mont. 484, 489-90, 893 P.2d 332, 336 (citations omitted).

Rafanelli attempted to show at trial that the access across Whiterock Ranch had always been on a permissive basis and, therefore, that the Dales could not prove the adverse use element necessary to establish a prescriptive easement.  The District Court found Rafanelli's evidence that the Carsons had granted the Dales permission to use Route B less credible than the Dales' evidence that they did not request permission.

The evidence that the Dales had disregarded the Carsons' two letters requesting the Dales to arrange for permission to cross the ranch,  that the Carsons took no affirmative action to stop the Dales' use of the access,  and that the Dales had improved and maintained Route B, is substantial evidence supporting the court's finding of adverse use.  The further finding that Claude's notes were evidence of adverse use was merely cumulative and not necessary to the District Court's determination that the Dales' use of Route B was adverse rather than permissive.  Thus, the court's finding that Claude Dale's hearsay notes were direct evidence of adverse use did not have a significant impact on the result that the court reached and did not cause substantial injustice to Rafanelli.

We conclude that the District Court's abuse of discretion in

29

admitting Exhibit 29 as direct evidence of adverse use was harmless and did not constitute reversible error.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

30



22

23

24

19

TOWN
OF
WATERLOO

27

26

25

30

N

24

35

36

ROUTE A 31

WATERLOO DUMP

ROUTE C

2

BEALL CREEK 1

6 WHITE ROCK RANCH BUILDINGS

BRIDGE

GATE

ROUTE B 11

12

7

10

DALES' PROPERTY

15

14

13

18