No. 99-411

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 229N

JEFF LANGEVIN,

Plaintiff and Appellant,

v.

TEDDY ANDERSEN, CAROL ANN ANDERSEN,

JOHN S. BASHAM, and SHARIE L. BASHAM,

Defendants and Respondents.

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

The Honorable Robert S. Keller, Retired Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James C. Bartlett, Kalispell, Montana

For Respondent:

Scott B. Spencer, Kalispell, Montana

Submitted on Briefs: March 16, 2000

Decided: August 22, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Jeff Langevin (Langevin) appeals the judgment and order of the Nineteenth Judicial District Court, Lincoln County.

¶3 We affirm in part and reverse in part.

¶4 The following issues are presented on appeal:

¶5 1. Whether the District Court erred in concluding that Langevin did not have a prescriptive easement.

¶6 2. Whether the District Court erred in awarding Defendants damages in the amount of $8,826.00.

Standard of Review

¶7 We review a district court's findings of fact to determine whether they are clearly erroneous. *See* Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. As we determined in Rafanelli v. Dale (1996), 278 Mont. 28, 33, 924 P.2d 242, 246 (citations omitted), "[i]t is within the province of the trier of fact to weigh the evidence and assess the credibility of witnesses and we will not second-guess those determinations. Moreover, we will uphold a district court's findings when there is substantial evidence to support them even when there is also evidence supporting contrary

findings." We review a district court's conclusions of law for whether they are correct. *See* Steer, Inc. v. Dept. Of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

## Factual and Procedural Background

¶8 In 1961 Jim and Mary Johnson (hereafter, the Johnsons) purchased the northeast quarter of the northwest quarter of Section 26 in Lincoln County. A steep hill "bisects the east half of said property, extending from the south by southwest to the north by northeast." When the Johnsons purchased their property, a foot trail crossed the hill from the southwest to the northeast. Jim Johnson opened the trail with a small tractor to a maximum width of three feet. Thereafter, apparently in the mid to late 1980s, Langevin purchased the northwest quarter of the aforementioned northeast quarter of Section 26, with the exception of two contiguous tracts of land. Since 1994, defendants Teddy and Carol Andersen (hereafter, the Andersens) and John and Sharie Basham (the Bashams) have also owned parcels of land in the northeast quarter of the northwest quarter of Section 26.

¶9 In August, 1998 Langevin filed a complaint, asserting that he had a right of way over a road crossing Defendants' property that he had used "under a claim of right openly, visibly, notoriously, and adversely to Defendants and Defendants' predecessors-in-interest continually for a period in excess of five years." A trial to the bench was held in March, 1999. The District Court found that the foot trail that the Johnsons widened to a maximum width of three feet remained in that condition until John Kneller (Kneller) logged timber in the area in 1992. When Kneller began his work, a twenty-foot wide slough crossed the trail and four-inch wide trees grew in the trail. Until Kneller cleared and widened the trail, it was impassable to four-wheel drive vehicles.

¶10 While Kneller conducted his logging, Langevin asked the Johnsons for permission to use the road to remove logs from his land. At that time, the Johnsons owned the property that the road crossed. The Johnsons gave him permission, but told him their permission was on a "temporary basis." When the logging was completed, the Johnsons barricaded a county road that provided access to the road that Kneller created. The Johnsons removed the barricade in 1993. In spring of 1997, a major slide crossed the road, blocked all vehicular traffic, and remained until the summer of 1998, when John Basham saw that someone was using a cat on the road. Basham installed a barricade on the road and contacted Langevin regarding ownership of the cat. Langevin told Basham that he had opened the road. After Langevin removed the slough covering the road, a "mass began

sliding downhill; causing significant damage." Basham agreed to remove the barricade so that Langevin could in turn remove the cat. Believing that Langevin had removed the cat, John Basham replaced the barricade. Langevin later "tore out the barricade."

¶11 The District Court determined that Langevin's use of the road began in 1992 with the permission of the Johnsons, that it was neither notorious nor hostile, that the Johnsons' permission ended in 1992, and that the road was barricaded until 1993, "i.e., he did not drive his pickup during that period of time." Further, the road was closed in 1997 because of the slough and the road did not reopen until 1998. The District Court further determined that Langevin's removal of the slough in 1998 "damaged the Defendants in the amount of $8,926." From the District Court's Judgment and Order Langevin appeals.

## Discussion

¶12 1. Whether the District Court erred in concluding that Langevin did not have a prescriptive easement.

¶13 An easement by prescription is created by operation of law. *See* Hitshew v. Butte/ Silver Bow County (citation omitted), 1999 MT 26, ¶ 16, 293 Mont. 212, ¶ 16, 974 P.2d 650, ¶ 16. The party claiming an easement by prescription must show "open, notorious, exclusive, adverse, continuous, and uninterrupted use of the easement claimed for the full statutory period of five years." Amerimont, Inc. v. Gannett (1996) (citations omitted), 278 Mont. 314, 318, 924 P.2d 1326, 1330. Further, "all elements must be proved," *Amerimont* (citations omitted), 278 Mont. 314, 318, 924 P.2d 1326, 1330, and the "consecutive five year period may have occurred at any time." Lemont Land Corp. v. Rogers (1994), 269 Mont. 180, 183, 887 P.2d 724, 726.

¶14 Langevin contends that he has satisfied the requirements for a prescriptive easement in either of two time periods: for October, 1986 through October, 1991 and "for years after that including the time period beginning July 1994, when the Respondents became owners." Langevin argues that he used the road "whenever he wished to retrieve firewood and logs and to enjoy recreational activities." At trial Langevin testified that he used the road an average of twelve times a year and, depending on the time of year, that he drove pickup trucks, motorbikes, and snocats on the road.

¶15 Defendants respond that Langevin has failed to establish an easement by prescription for *any* relevant five year period of time. They contend that the District Court had

substantial credible testimony that the road was not passable for vehicles before 1992. Further, Defendants argue that Langevin has failed to show that he acquired an easement by prescription after 1992.

¶16 We conclude that the District Court had substantial credible evidence that the road was not used by vehicular traffic before 1992. A number of witnesses so testified. For example, John Kneller, who logged timber in the area in 1992, testified that before 1992 the road was "not really a road, it never was, it was a skid trail" and that it would not have been possible for someone to drive a pickup on the skid trail. Mary Johnson testified that the road was a mere foot trail in 1961 when she and her husband bought the property. She testified that her husband widened the trail with a very small tractor. Further, she disputed Langevin's testimony that in the late 1980s he had begun driving regularly down the road to access his property, stating "I was not aware that he ever made it down the road because there were trees across, and there was a big slide and stumps that had been rolled over." Mary Johnson remembered seeing Langevin drive by her house and honk and wave, but she said "the fact that he went by our house did not tell us where he was going. There's a loop there."

¶17 Although Langevin's testimony regarding his use of the road contradicted that of other witnesses, we will not disturb the District Court's determination of witness credibility. *See, e.g.*, *Rafanelli,* 278 Mont. at 33, 924 P.2d at 245-46 (citations omitted). We hold that the District Court correctly concluded that Langevin did not acquire an easement by prescription for the road prior to 1992.

¶18 We turn to Langevin's claim that he established an easement by prescription sometime after 1991. Langevin claims vaguely that "for years after [1991] including the time period beginning July 1994, when the Respondents became owners," he also obtained a prescriptive easement. Langevin has not met his burden to show that he obtained an easement by prescription for a *specific* consecutive statutory five year period after 1991. *Compare Amerimont*, 278 Mont. at 318, 924 P.2d at 1330 (concluding the party claiming an easement by prescription must show "open, notorious, exclusive, adverse, continuous, and uninterrupted use of the easement claimed for the full statutory period of five years") and *Lemont,* 269 Mont. at 183, 887 P.2d at 726 (concluding the "consecutive five year period may have occurred at any time").

¶19 Moreover, substantial evidence supported the District Court's conclusion that Langevin did not obtain an easement by prescription after 1991. Mary Johnson testified

that after Kneller improved the road for logging in 1992, Langevin asked her permission to use the road to remove logs from his property. She testified that they "agreed that he [Langevin] could use it [the road] to bring his logs out, but we also reminded him that we were not granting any sort of a permanent easement . . . ." Langevin's permissive use was inconsistent with an easement by prescription. *Compare* Public Lands Access v. Boone and Crockett (1993), 259 Mont. 279, 284, 856 P.2d 525, 528 (citation omitted) (concluding a permissive continuous use of road is not adverse and does not ripen into prescriptive right).

¶20 Further, Langevin does not claim that the District Court's findings that the road was "barricaded until 1993, i.e., he [Langevin] did not drive his pickup during that period of time" and that "the road was closed in 1997 by virtue of the sloughing, and stayed closed until 1998" were clearly erroneous. On this undisputed record, we conclude that Langevin has failed to show that there was a *consecutive* five year period in which he could have obtained an easement by prescription after 1991. We hold that the District Court correctly concluded that Langevin did not establish adverse use of the road for "a period of five continuous years" after 1991 and that he does not have an easement by prescription. Because this holding is dispositive, we decline to address the other issues that Langevin raises.

¶21 2. Whether the District Court erred in awarding Defendants damages in the amount of $8,826.00.

¶22 At trial, Andersen testified that the cost of repairing the damage to the hill and road from Langevin's clearing the slough was $8,826.00. Basham testified that his costs in installing the barricade were $100.00.

¶23 Langevin argues that the District Court erred in awarding damages in the amount of $8,926.00. He argues that although John Basham was competent to testify about his costs of $100 in installing a barricade, Andersen lacked necessary personal knowledge to testify about the costs of working on the sloughed roadway pursuant to Rule 701, M.R.Evid. Langevin argues that the District Court abused its discretion in allowing Andersen to read from a list of costs that Chris Nobles prepared, because the summary was "intended for an expert witness" and it was a hearsay statement.

¶24 Defendants respond that Andersen's testimony was sufficient to establish the cost of repairs. Defendants argue that the costs to which Andersen testified "were based on values

given to Andersen by Chris Noble for the hiring of the work." Defendants contend further that Andersen had a reasonable basis for his damage claim and that he "had particular expertise upon which to base his conclusions and damage calculations."

¶25 We turn to Andersen's testimony. We note initially that the District Court did *not* recognize Andersen as an expert on road and hill reconstruction costs. Andersen testified that after the slough occurred in 1997, he concluded that Langevin's removal of slough material had destabilized the slide area. Andersen testified that he had prepared a summary of costs that Chris Noble, a contractor, gave him. Langevin's counsel objected to the summary on the grounds of hearsay and foundation. In response, Defendants' counsel offered "the testimony of Mr. Andersen subject to my subsequently calling Mr. Noble to verify the values that he used because we are a little bit out of order." Andersen testified that the total cost of the work necessary to restore the road would be $8,826. When Defendants' counsel questioned Chris Noble about the costs, Langevin's counsel objected on the ground that Noble was "not listed as a witness in the pretrial order, and so for him to give an opinion at this late stage would be improper." The District Court sustained the objection. Thus, to establish his damages, Andersen offered only hearsay testimony concerning Noble's cost estimates. Noble did not verify those costs; he testified only that he provided "prices" to Andersen.

¶26 As the District Court lacked competent evidence regarding Andersen's damages, we conclude that the District Court erred in determining damages. Because the District Court's award of $8,826 in damages was based solely on Andersen's testimony, we further conclude that the District Court's error substantially prejudiced Langevin.

27 ¶The District Court's judgment that Andersen sustained damages in the amount of $8,826 is therefore reversed.

¶28 However, because Langevin does not dispute Basham's costs of one hundred dollars for the barricade, that part of the District Court's award of damages is affirmed.

/S/ W. WILLIAM LEAPHART

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER