NO.   94-263

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

LEMONT LAND CORPORATION,
a Montana corporation,

Plaintiff and Respondent,

-vs-

DAVID "BUZZ" ROGERS,

Defendants and Appellant.

FILED

DEC 20 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Sixth Judicial District,
               In and for the County of Park,
               The Honorable Byron L. Robb, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

             Kent R. Douglass; Swandal, Douglass, Frazier & Cole,
             Livingston, Montana

        For Respondent:

             Karl Knuchel, Attorney at Law, Livingston, Montana


                      Submitted on Briefs:  October 13, 1994
                                  Decided:  December 20, 1994

Filed:

_____
                Clerk

Justice Karla M. Gray delivered the Opinion of the Court

David "Buzz" Rogers (Rogers) appeals from a judgment entered by the Sixth Judicial District Court, Park County, quieting title to certain property in Lemont Land Corporation (Lemont), and from the court's underlying order granting Lemont's, and denying his, motion for summary judgment. We conclude that no genuine issues of material fact exist and that Rogers is entitled to judgment as a matter of law on his claim to a prescriptive easement across Lemont's property. Therefore, we reverse and remand for entry of summary judgment in Rogers' favor.

Lemont brought this action to quiet title to property across which Rogers claims a prescriptive easement. The facts relating to the property involved and the parties' ownership of that property are not in dispute.

Lemont and Rogers own adjoining properties bordering Mill Creek in Park County. Rogers first took possession of his thirty-eight acres of land in 1967 as a lessee, obtaining the deed thereto in 1972. Lemont obtained its property from the Blackacre Land Company (Blackacre) in 1991. Blackacre had purchased the land from Sharon and Phillip Malcolm (Malcolms) in 1990. The Malcolms purchased the land in 1975 from Mile High Ranch, Incorporated, a corporation owned by Phillip Malcolm and his father, mother, and brother. Phillip Malcolm lived on the property from 1938 through 1990.

Both Rogers' and Lemont's parcels lie immediately east of Mill

Creek; the creek forms the western border of each parcel. Lemont's property fronts Rogers' on the north, east and south sides. To the west of each parcel across Mill Creek is a county road which runs generally north and south.

Prior to the mid-1970s, primary access to Rogers' property was via a deeded easement from the county road heading due east, across a bridge over Mill Creek, and onto the northwest corner of his parcel. We refer to this access as access #1. Access to Lemont's property is via an easement from the county road heading east, across a bridge over Mill Creek, and entering the southwest portion of Lemont's parcel. We refer to this access as access #2. Access #2 passes the residence and livestock area on Lemont's parcel, then heads north onto Rogers' property where it links up with access #1.

In the mid-1970s, the bridge over which access #1 passed washed out and has never been replaced. From that point forward, Rogers used access #2 exclusively.

At some point, a gate was placed across access #2 to control livestock. During the Malcolms' ownership and occupation of the property now owned by Lemont, this gate was closed--but not locked or chained--when the Malcolms would bring their livestock down to the calving area. During such periods, Rogers would open and shut the gate as he drove through to his property.

Since the mid-1970s, access #2 has been used by Rogers and his invitees on a daily basis as the sole means of ingress to, and egress from, his property. Rogers has never sought permission to use the road. Rogers and Phillip Malcolm--predecessor in interest

3

to both Rogers and Lemont--agree that Rogers' use of the road was never discussed during the many years they were neighbors. Rogers made no effort to hide his use of the access, treating the road as if it were his own. During Rogers' occupation of his land, the only objection or comment regarding his use was made by the present owner, Lemont. Access #2 provides access only to Lemont's and Rogers' properties. Rogers and Lemont, together with their invitees, are the only frequent users of the road.

After Lemont obtained the property in 1991, it attempted to limit Rogers' use of access #2 by locking a gate between the parcels, thereby denying Rogers access to his land. Rogers cut the lock, precipitating Lemont's quiet title action.

Both parties moved for summary judgment. Rogers asserted entitlement to judgment on the basis that a prescriptive easement had been created as a matter of law, while Lemont contended that it was entitled to have title quieted to its property with no easement in Rogers' favor. The District Court granted Lemont's motion, denied Rogers' motion and entered judgment quieting title to Lemont's property. Rogers appeals.

> Did the District Court err in granting Lemont's motion for summary judgment and denying Rogers' motion for summary judgment on the basis that Rogers had not established a prescriptive easement across Lemont's land?

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. We review an order granting summary judgment by applying the same criteria as the district court. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849

4

P.2d 212, 214.

To establish an easement by prescription, the party claiming the easement must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the claimed easement for the full statutory period of five years. Public Lands v. Boone and Crockett (1993), 259 Mont. 279, 283, 856 P.2d 525, 527 (citation omitted). The consecutive five-year period may have occurred at any time; prescriptive title, once established, is not divested by the subsequent transfer of the servient estate. O'Connor v. Brodie (1969), 153 Mont. 129, 139, 454 P.2d 920, 926. Thus, our inquiry into whether Rogers' use of access #2 matured into a prescriptive right focuses on the record before us regarding his use of access #2 between the mid-1970s, when the access #1 bridge washed out, and 1990, when the Malcolms sold the property reached by access #2 to Blackacre.

The first requirement in establishing a prescriptive right is that the use be open and notorious. We have defined "open and notorious" as a distinct and positive assertion of a right hostile to the rights of the owner and brought to the attention of the owner. Downing v. Grover (1989), 237 Mont. 172, 176, 772 P.2d 850, 852 (citations omitted).

No genuine issue of material fact exists with regard to the open and notorious nature of Rogers' use of access #2. Rogers and his invitees did not attempt to conceal their use of the road, traveling over it on a daily basis and at their own discretion. In addition, access #2 passes just 100 feet from the Malcolms' full-

5

time residence during the years in question, close enough for the traffic, dust and noise to constitute a noticed use that was hostile to the Malcolms' ownership. We conclude that Rogers' use of access #2 was open and notorious as a matter of law.

The second requirement for establishing a prescriptive right is that the use be exclusive. In the case of a claimed prescriptive easement for a right of way, exclusive use means no more than that the right of the claimant must rest upon its own foundations and not depend upon a like right in any other person. Scott v. Weinheimer (1962), 140 Mont. 554, 561-562, 374 P.2d 91, 95, overruled in part on other grounds, Warnack v. Coneen Family Trust (Mont. 1994), 879 P.2d 715, 51 St.Rep. 739. It is not necessary that the person asserting a right by prescription be the only one who used the roadway, so long as the right was exercised under a claim of right independently of others. See Scott, 374 P.2d at 95-96.

No genuine issue of material fact exists with regard to whether Rogers' use of the road was dependent upon another's claim or right. Rogers and the Malcolms, together with their invitees, appear to have been the only regular users of access #2. Indeed, as noted above, access #2 provides access to no other property. We conclude that Rogers' use of the road was exclusive as a matter of law.

The third requirement for a prescriptive easement is that the use be continuous and uninterrupted. We have defined "uninterrupted use" as a "use not interrupted by the act of the

6

owner of the land or by voluntary abandonment by the party claiming the right."  Downing, 772 P.2d at 852 (citations omitted). "Continuous" use is that which is made often enough to constitute notice of the claim to the potential servient owner.  Downing, 772 P.2d at 852 (citations omitted).

No genuine issue of material fact exists with regard to the continuous and uninterrupted nature of Rogers' use of access #2. It is undisputed that Rogers and his invitees used the road on a daily basis after the access #I bridge washed out in the mid-1970s. From that time until the Malcolms sold the property in 1990, Rogers' use of the roadway was not interrupted by the Malcolms or abandoned by Rogers.  The only variation in Rogers' unbroken use of the road during that time was Rogers' and the Malcolms' use of an unlocked gate to keep the Malcolms' livestock from wandering off their land; the gate was neither intended nor used to deny, limit or control Rogers' access to the road.  The only actual interruption in Rogers' use of access #2 came in 1991 or 1992, when Lemont locked a gate along access #2.  On the basis of this evidence, we conclude that Rogers' use of access #2 from the mid-1970s until the Malcolms sold the property in 1990 was continuous and uninterrupted as a matter of law.  It necessarily follows, of course, that the use was for the full five-year statutory period.

The final requirement in establishing a prescriptive easement is that the use be "adverse."  To be adverse, the use must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land; such

7

claim must be known to, and acquiesced in by, the owners of the land. Warnack v. Coneen Family Trust (Mont. 1994), 879 P.2d 715, 719, 51 St.Rep. 739, 741 (citations omitted). Given that definition, it follows that in most instances adverse use will be proven from the same evidence by which the easement claimant establishes open, notorious, continuous and uninterrupted use for the statutory period. Warnack, 879 P.2d at 724.

After the claimant has established the preliminary requirements for a prescriptive right, a presumption of adverse use arises; the burden then shifts to the owner of the land on which the prescriptive easement is claimed to establish permissive use or license. Warnack, 879 P.2d at 723-724. If an owner establishes that the use is permissive, no easement can be acquired. See Warnack, 879 P.2d at 719 (citation omitted).

Here, as discussed above, no genuine issue of material fact exists with regard to Rogers' open, notorious, continuous, uninterrupted and exclusive use of access #2 for the statutory period. Thus, Rogers is entitled to the presumption of adverse use. Lemont could overcome the presumption by bringing forth sufficient evidence to raise a genuine issue of material fact regarding whether the use was permissive.

As discussed above, the evidence is clear and undisputed that Rogers' use of access #2 was not dependent upon permission or license. After the access #1 bridge washed out in the mid-1970s, Rogers began using access #2 on a daily basis. This use continued unchecked and uninterrupted from the mid-1970s through at least

8

1990.  Phillip Malcolm admits that, during his ownership of the property over which access #2 passes, Rogers was not required to seek permission to use the road; nor was there an objection to, or attempt to control, Rogers' use.  Moreover, contrary to Lemont's argument, Rogers was not required to notify the Malcolms that his use of access #2 was adverse.  Rogers' acts alone, which were inconsistent with the Malcolms' title, were sufficient to constitute notice.  Groshean et al. v. Dillmont Realty Co. (1932), 92 Mont. 227, 241, 12 P.2d 273, 276.

The only impediment to Rogers' totally unfettered use of access #2 was the gate used by the Malcolms to control their livestock.  We previously have stated that the presence of gates may be strong evidence of a mere license.  Parker v. Elder (1988), 233 Mont. 75, 79-80, 758 P.2d 292, 294 (citations omitted).  Here, however, as was the case in Parker, the gate was used to control livestock, not travel; thus, the evidence regarding the gate is insufficient to overcome the presumption of adverse use.  See Parker, 758 P.2d at 294.

Lemont also could overcome the presumption of adverse use if it could demonstrate that Rogers' use constituted an ongoing act of "neighborly accommodation."  We have determined that:

> use of a neighbor's land based upon mere neighborly accommodation or courtesy is not adverse and cannot ripen into a prescriptive easement.  Thus where the use of a way was by express or implied permission of the owner, it was held that the continuous use of the way by the neighbor was not adverse and did not ripen into a prescriptive right.

Boone and Crockett, 856 P.2d at 528; citing Rathbun v. Robson

(1983), 203 Mont. 319, 323, 661 P.2d 850, 852. Neighborly accommodation is a form of permissive use which, by custom, does not require permission at every passing. See Boone and Crockett, 856 P.2d at 528.

In Boone and Crockett, the plaintiffs did not establish the preliminary requirements for a prescriptive easement; as a result, they were not entitled to the presumption of adverse use and the burden did not shift to Boone and Crockett to demonstrate that the use was merely permissive. Boone and Crockett, 856 P.2d at 528-529. Even if the plaintiffs had been entitled to the presumption, however, it would have been rebutted by the evidence of record, which indicated that both the present landowners and their predecessors in interest had exercised control over access to the property, including requiring express permission from some users. Those crossings which were not barred outright, controlled, or allowed by permission could be explained as mere neighborly accommodation. Boone and Crockett, 856 P.2d at 528-529. As one local resident stated, the whole remote area was "open" and crossings between parcels were allowed as part of neighborly accommodation and local custom since the homesteading years. Boone and Crockett, 856 P.2d at 528.

The record in this case is very different. Here, unlike Boone and Crockett, there is no affirmative evidence that local custom authorized Rogers' passage over the Malcolms' property other than Phillip Malcolm's subjective and limited assertion that "in a sense" he was being "neighborly" by allowing Rogers to use the

10

road. Affidavits from long-time residents of the area indicate that access #2 was considered the legal access to Rogers' parcel and was used extensively by business and social invitees without comment or objection by the Malcolms.

A second distinction between this case and Boone and Crockett lies in Rogers' use of the easement. We have already determined that his use was open, notorious, exclusive, continuous and uninterrupted as a matter of law. In this case Rogers treated access #2 as if it were his own, using the road in an obvious and hostile manner. Such a pervasive use contrasts sharply with the sporadic and unobtrusive passings authorized by the custom of neighborly accommodation in Boone and Crockett.

We conclude that no genuine issue of material fact exists with regard to whether Rogers' use was adverse as a matter of law. Having already determined that the preliminary requirements of a prescriptive right have been met, Rogers is entitled to summary judgment as a matter of law. We hold, therefore, that the District Court erred in granting Lemont's, and denying Rogers', motion for summary judgment.

Reversed and remanded with instructions to enter summary judgment in Rogers' favor.

_____
                        Justice

11

We concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

Justices