No. 01-721

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 346

LAWRENCE E. BRUMIT, III and LEILA P. BRUMIT,
husband and wife; RAYMOND W. KARR and JANE W.
KARR, husband and wife; TODD L. SAUR and RAYLENE
K. SAUR, husband and wife; WALTER J. FILLMORE and
DOROTHY J. FILLMORE, husband and wife,
            Plaintiffs and Appellants,

      and

BRYAN BOLIN, LISA BOLIN, RAYMOND BOLIN,
LORETTA BOLIN, and BOLIN RANCHES, a Montana
corporation,
            Appellants,
      v.

ROBERT LEWIS and ROSE LEWIS (deceased),
            Defendants and Respondents.


APPEAL FROM:    District Court of the Twenty-First Judicial District,
                In and for the County of Ravalli,
                The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

            For Appellants:

                Zane K. Sullivan & Z. Kent Sullivan, Sullivan, Tabaracci & Rhoades,
            Missoula, Montana

            For Respondents:

                John D. Greef, Hamilton, Montana; Robert B. Brown, Stevensville, Montana

                                Submitted on Briefs:  March 7, 2002

                                    Decided:  December 30, 2002

Filed:


            _____
                            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Appellants Lawrence E. Brumit and Leila P. Brumit (Brumits), Raymond W. Karr and Jane W. Karr (Karrs), Todd L. Saur and Raylene K. Saur (Saurs), and Walter J. Fillmore and Dorothy J. Fillmore (Fillmores) filed a complaint to quiet title in the Twenty-First Judicial District Court, Ravalli County.  They requested a determination that no other person had a right of access by way of an easement over their respective properties, and sought an injunction to permanently prevent any person from trespassing on such properties.  Two of the named Defendants in the complaint, Respondents Rose Lewis and her son Robert Lewis (Lewises), filed a counterclaim, alleging that they had established an easement by prescription over the properties in dispute.  The parties Bode, et al, intervened in the case, and asserted that they had also established an easement over the properties in dispute, as well as over the properties of Appellants Bryan Bolin, Lisa Bolin, Raymond Bolin, Loretta Bolin, and Bolin Ranches (Bolins).

¶2      Following a bench trial, the District Court entered an interlocutory judgment on the complaint to quiet title, granting the Lewises an easement by prescription over the properties in dispute, as well as over the Bolin properties.  The judgment was then certified for purposes of appeal.  The Brumits, Karrs, Saurs, Fillmores, and Bolins (the Appellants) appeal the judgment of the District Court, with regard to the prescriptive easement granted to the Lewises.  We affirm the judgment of the District Court.

¶3      We restate the sole issue on appeal as follows:

¶4 Did the District Court err when it granted the Lewises a prescriptive easement over the properties of the Appellants?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5 The parcels of property in dispute here are located in the Ambrose Creek drainage in Ravalli County, Montana. The portion of the road in dispute runs across the Appellants' properties, coming to an end on the property of the Lewises. A brief history of the ownership of the Lewis property, as pertinent to the evidence supporting the easement, is set forth below.

¶6 In 1937 and 1938, Theodore Brechbill (Theodore) acquired the property currently owned by the Lewises from Dr. Louis Fales and Ida Fales. Theodore used the Lewis property for various agricultural and recreational purposes, and lived on a portion of the land for a number of years. In 1992, Theodore leased the Lewis property to his nephew Robert Lewis (Robert). Upon Theodore's death in 1995, Theodore's sister, Rose Lewis (Rose), acquired the Lewis property by deed. In December of 1995, Rose leased the Lewis property to her son Robert, via a lease-option agreement. Rose is currently deceased, and Robert is the personal representative of her estate, as well as her successor in interest with regard to the Lewis property. Between 1900 and 1985, members of the Brechbill family, including Theodore's mother, Octavo Brechbill (Octavo), were also in possession of the property adjacent to the Lewis property. This adjacent property is currently owned by the Brumits.

¶7 This is not the first time that the use of the road in dispute has been the subject of litigation. The right of the Brechbills to use the road to reach their properties was litigated in

3

*Pentz v. Brechbill*, Cause No. 7503, Fourth Judicial District Court, Ravalli County, 1946.

Percy Pentz was the previous owner of the property on which the disputed portion of the road begins. In 1944, a dispute arose between Pentz and the Brechbills over the Brechbills' use of the road on Pentz's property. Pentz sought to enjoin the Brechbills from crossing his land, while the Brechbills claimed that their predecessors had purchased a right-of-way over Pentz's land in the 1920s. The *Pentz* Court granted Octavo and Theodore an easement appurtenant to Octavo's property, in which they had the legal right to pass over the property owned by Pentz. In the instant case, the District Court took judicial notice of the *Pentz* decision, as the road at issue in *Pentz* is the same road at issue in the case before us.

¶8      With the exception of the *Pentz* litigation, there was never any hostility from Theodore's neighbors regarding Theodore's use of the disputed road. However, when Robert Lewis acquired an interest in the Lewis property in 1992, the relationship between the neighbors shifted. Although there had always been a series of unlocked gates across the disputed road, at least one of these gates was locked by Lawrence Brumit sometime during Robert's occupation of the Lewis property. Robert reacted to Brumit's action by taking a gate off its hinges, sparking controversy between the long-time neighbors.

¶9      On August 30, 1996, the Brumits, Karrs, Saurs and Fillmores filed a complaint to quiet title with the District Court, in which they listed both named and unnamed defendants. The complaint to quiet title requested a determination that no other person had a right of access by way of an easement over the complainants' respective properties. The complaint further requested an injunction to permanently prevent any person from trespassing over the

4

properties. Finally, under breach of contract and trespass theories, the complaint sought to recover damages for reduction in property value, as well as the costs and attorney's fees resulting from the action.

¶10 Rose and Robert Lewis were two of the named Defendants in the complaint to quiet title. On December 4, 1996, the Lewises counterclaimed, asserting that they possessed a valid easement over the properties in dispute, which was established by prescription. The case became further complicated when the parties Bode, et al, intervened and joined the Bolins. However, the claims of Bode, et al, are not at issue here. Following disposition of these claims, the only issue remaining in the case at the time of trial was whether the Lewises had established a prescriptive easement over the properties of the Appellants.

¶11 Pursuant to Rule 56, M.R.Civ.P., the Lewises brought a motion for summary judgment on February 2, 1999, alleging that they had obtained an easement by prescription over the Appellants' properties. The Appellants filed a cross-motion for summary judgment against the Lewises on February 22, 1999. The District Court denied both summary judgment motions on November 1, 1999, and the case proceeded to a non-jury trial on May 4, 2000. On July 6, 2001, the District Court issued its findings of fact, conclusions of law and interlocutory judgment, granting the Lewises an easement by prescription over the north fork of the disputed road on the properties of the Appellants. Pursuant to Rule 54(b), M.R.Civ.P., the District Court certified its interlocutory judgment as final on August 9, 2001. On August 15, 2001, the Appellants appealed the judgment of the District Court.

**STANDARD OF REVIEW**

5

¶12 We review a district court's findings of fact to ascertain whether they are clearly erroneous. *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed. *Kovarik v. Kovarik*, 1998 MT 33, ¶ 20, 287 Mont. 350, ¶ 20, 954 P.2d 1147, ¶ 20. The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co., Inc.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## DISCUSSION

¶13 **Did the District Court err when it granted the Lewises a prescriptive easement over the properties of the Appellants?**

¶14 The District Court found that if a prescriptive easement was in fact established over the Appellants' properties, it was established by the Lewises or their predecessors between 1927 and 1995. Louis and Ida Fales owned the Lewis property until 1937, however, they left the property sometime in the late 1920s. Theodore Brechbill managed the property in their absence, finally acquiring it from the Fales in 1937 and 1938. Rose Lewis claimed no interest in the property until she inherited it in 1995, and as such, her use of the road is inconsequential to this case. Similarly, because Robert Lewis did not lease the Lewis property until 1992, he had no interest in the property until the last three years of the period at issue. Therefore, it is Theodore Brechbill's use of the disputed road which is crucial to the instant case, as Theodore owned the Lewis property from 1937 until his death in 1995.

6

Accordingly, we conclude it is proper for the Lewises to rely on the actions of Theodore Brechbill, their predecessor in title, to prove their prescriptive easement claim.

¶15    To establish an easement by prescription, the party claiming the easement must show open and notorious, exclusive, continuous, uninterrupted, and adverse use of the claimed easement for a full five-year period. *Lemont Land Corp. v. Rogers* (1994), 269 Mont. 180, 183, 887 P.2d 724, 726. The term "open and notorious use" is defined as "a distinct and positive assertion of a right hostile to the rights of the owner and brought to the attention of the owner." *Amerimont, Inc. v. Gannett* (1996), 278 Mont. 314, 323, 924 P.2d 1326, 1333. "Exclusive use" means that "the right of the claimant must rest upon its own foundations and not depend upon a like right in any other person." *Lemont*, 269 Mont. at 184, 887 P.2d at 727. This Court has defined "continuous use" as that which "is made often enough to constitute notice of the claim to the potential servient owner." *Lemont*, 269 Mont. at 184, 887 P.2d at 727. "Uninterrupted use" is "use not interrupted by the act of the owner of the land or by voluntary abandonment by the party claiming the right." *Lemont*, 269 Mont. at 184, 887 P.2d at 727. Finally, the term "adverse use" means use exercised under a claim of right, and not as a mere privilege or license revocable at the pleasure of the owner of the land. Such a claim must be known to, and acquiesced in by, the owners of the land. *Lemont*, 269 Mont. at 185, 887 P.2d at 727. The party claiming the easement has the burden to prove each element of prescription with clear and convincing evidence. *Wareing v. Schreckendgust* (1996), 280 Mont. 196, 205, 930 P.2d 37, 43.

¶16    The Appellants assert that the Lewises have not adequately established the elements of

7

prescription in the instant case. Particularly, the Appellants maintain that Theodore's use of the disputed road failed to satisfy the prescriptive elements of open and notorious use, exclusive use, and adverse use. The Appellants do not specifically allege that the Lewises failed to satisfy the prescriptive elements of continuous and uninterrupted use. As such, this Court declines to discuss these two elements.

¶17 In support of their contention that the Lewises failed to prove the open and notorious element of their prescriptive easement claim, the Appellants rely upon the definition of "open and notorious" provided in *Amerimont*, referenced above, and the definition of "notice" provided in *Mildenberger v. Galbraith* (1991), 249 Mont. 161, 167, 815 P.2d 130, 134-35. In *Amerimont*, we stated that "open and notorious" use requires a distinct and positive assertion of a right hostile to the rights of the owner. We also specified that such an assertion must be brought to the owner's attention. *Amerimont*, 278 Mont. at 323, 924 P.2d at 1333. In *Mildenberger*, 249 Mont. at 167, 815 P.2d at 134-35, we noted that:

> an open and notorious possession is such that it will give the owner of the property right either actual knowledge of the hostile claim, or be of such a character as to raise a presumption of notice, or be so patent that the owner could not be deceived.

The Appellants maintain that Theodore's visible use of the disputed road was not akin to a distinct assertion made by Theodore concerning a prescriptive claim. The Appellants also assert that they received no notice of Theodore's adverse use.

¶18 The District Court, however, found that the Appellants had actual knowledge of Theodore's use of the road for several decades prior to this action, as Theodore's use was

never covert or hidden. The District Court noted witness testimony, which indicated that Theodore was observed by several area landowners, including the Brumits, both using and maintaining the road. Furthermore, there is no evidence that Theodore concealed his regular use and maintenance of the road from any of the parties to this case. As such, Theodore's use and maintenance of the road was adequate to provide the Appellants with notice that he was making a claim to use of the road. Accordingly, we conclude that Theodore's actions were sufficiently open and notorious to establish the Lewises' prescriptive easement claim.

¶19 The Appellants also allege that the Lewises failed to satisfy the exclusivity element of their prescriptive easement claim. To bolster this allegation, the Appellants cite our discussion of exclusivity in *Lemont*. We stated in *Lemont* that "it is not necessary that the person asserting a right by prescription be the only one who used the roadway, so long as the right was exercised under a claim of right independently of others." *Lemont*, 269 Mont. at 184, 887 P.2d at 727. The Appellants contend that Theodore's claim was not an independent claim of right, but rather a right he enjoyed via his mother Octavo's claim of right. As noted above, Octavo was granted an easement appurtenant to the Brechbill property, which was adjacent to the current Lewis property, in *Pentz* in 1946. The Appellants assert that absent an indication to the contrary, neither the Appellants, nor their predecessors, had reason to believe that Theodore's use of the road was occurring pursuant to anything other than the legal right his mother held.

¶20 The District Court examined the pleadings from *Pentz*, noting that Percy Pentz admitted, in his original complaint, that his property was subject to the rights of both Octavo

9

and Theodore to travel across his property by way of the road. Pentz's admission was a concession that Theodore had a legal right, independent from Octavo's right, which was appurtenant to the former Brechbill property. Therefore, Theodore's right to use the road to cross the properties in dispute was an exclusive right. As such, we hold that Theodore's use of the disputed road satisfies the exclusivity element of the Lewises' prescriptive easement claim.

¶21 Relying upon five related theories, the Appellants finally assert that Theodore's use of the disputed road was not adverse. The District Court addressed the adversity element, citing *Rappold v. Durocher* (1993), 257 Mont. 329, 333, 849 P.2d 1017, 1020, where we held that "adverse use is established by presumption if all other elements of the claim are demonstrated." If the party claiming prescription establishes all of the other elements, the burden falls on the opposing party to show that the use was not adverse, but rather, permissive. *Rappold*, 257 Mont. at 333, 849 P.2d at 1020. The District Court found that no such permissive use existed in the instant case. We agree with the District Court, for the reasons set out below.

¶22 The Appellants allege that Theodore's use of the road began pursuant to either neighborly accommodation or implied permission, both of which were insufficient to establish adversity. In support of this allegation, the Appellants cite *Amerimont*, in which we indicated that use based on neighborly accommodation or courtesy is not adverse and cannot ripen into prescriptive use. *Amerimont*, 278 Mont. at 324, 924 P.2d at 1333. The Appellants assert that the facts of *Amerimont* mirror the facts in the instant case. In *Amerimont*, we held

10

that the appellant, Amerimont, Inc., had not established a prescriptive easement over respondent Gannett's property because Amerimont was unable to satisfy the element of adversity. *Amerimont*, 278 Mont. at 325, 924 P.2d at 1334. We determined that "Amerimont and its predecessors had the privileged use of the roadway pursuant to the permission and neighborly accommodation extended by Gannett and his predecessors. . . . The roadway was used by the express or implied permission of the landowner." *Amerimont*, 278 Mont. at 324-25, 924 P.2d 1333-34.

¶23 The facts of *Amerimont* are distinguishable from those in the case before us. Our decision in *Amerimont* turned on evidence of the longstanding permission which Amerimont received, allowing it to cross Gannett's property. In the instant case, there is no evidence that Theodore, Robert Lewis, or the Fales ever requested or received any type of permission to use the disputed road. In fact, Theodore and Octavo engaged in litigation to establish their right to use this road in *Pentz* in 1946. The rights of Theodore and Octavo to use the road were hostile to the rights of Percy Pentz, who commenced the lawsuit to prevent the Brechbills from using one of the roads on his property. As a result of the litigation, Octavo and Theodore were granted an easement over Pentz's property by the *Pentz* Court, not by permission from Pentz. Furthermore, there is no evidence that, subsequent to the *Pentz* decision, the Brechbills or the Lewises obtained express permission to use the road from any of the other neighboring landowners.

¶24 The record is also devoid of any evidence that the Appellants gave the Lewises permission, express or implied, to use the disputed road. Rather, use of the road was at times

11

a struggle for the Bechbills and for Robert Lewis. Pentz's lawsuit, and the Brumits' lock on the gate, indicate that neighboring landowners never implied to the Brechbill family that they had permission to use the road to reach their properties. Accordingly, we hold that the Appellants failed to establish that Theodore's use of the disputed road occurred pursuant to either neighborly accommodation or implied permission.

¶25    In the alternative, the Appellants maintain that if Theodore's use of the road occurred pursuant to a granted right, then such use was permissive, and could not be adverse. The Appellants further assert that, as a result of their assumption that Theodore was acting under a granted right, they had no notice of Theodore's prescriptive claim. The Appellants support this assertion with the facts of *Pentz*. However, the easement granted to Theodore and Octavo in *Pentz* was appurtenant to the former Brechbill property, not to the Lewis property which Theodore acquired in 1937 and 1938. That is, the easement Theodore was granted over Pentz's property was based upon his family's interest in the former Brechbill property, not his individual ownership of the Lewis property. Theodore never received an easement which was appurtenant to the Lewis property. Theodore's use of the road to reach the Lewis property was never exercised under a granted right, and such use was therefore adverse to the rights of the owners of the properties in dispute. Theodore used the road to reach the Lewis property from the late 1920s until his death in 1995. This seventy-year period provided the Appellants and their predecessors with considerable notice of Theodore's presence, and afforded them ample opportunity to either object to or condone Theodore's use of the disputed road. As such, the Appellants are unable to rely on the easement granted to

12

Theodore in *Pentz* to rebut the presumption that his use of the road was adverse.

¶26    Third, the Appellants contend that simple, longstanding use of an easement is insufficient to create title by prescription, and instead creates a presumption of permission. The Appellants support this contention in reliance upon *Wilson v. Chestnut* (1974), 164 Mont. 484, 489, 525 P.2d 24, 26, which states that "the mere use of the road in controversy for the required time is not sufficient to create a title by prescription." The Appellants also cite *White v. Kamps* (1946), 119 Mont. 102, 116, 171 P.2d 343, 349, for the principle that longstanding use of an easement, without evidence of adversity, will not ripen into a prescriptive right.

¶27    However, as noted above, there is evidence of more than just simple, longstanding use of the road by Theodore. There is evidence of adversity. Furthermore, as we stated above, if the party claiming prescription establishes all of the other elements, the burden falls on the opposing party to show that the use was not adverse, but rather, permissive. *Rappold*, 257 Mont. at 333, 849 P.2d at 1020. In the instant case, the Appellants have not established that Theodore's use of the disputed road was permissive, and as such, Theodore's use of the road is presumed to be adverse.

¶28    Fourth, the Appellants assert that if the use of a piece of land is unexplained, no presumption of adversity arises. The Appellants cite *Warnack v. Coneen Family Trust* (1994), 266 Mont. 203, 215, 879 P.2d 715, 723, for the proposition that "a prescriptive easement cannot be established through 'unexplained' use of the road or trail in question; the requisite elements for establishing a prescriptive easement must be proved by the claimant."

13

We further noted in *Warnack* that "unexplained" use is "simply a use, the origin or continuation of which is undecipherable, unknown or is, otherwise, without an articulable reason or justification." *Warnack*, 266 Mont. at 212, 879 P.2d at 721. The Appellants contend that there is a lack of evidence as to the original use of the disputed road, and as such, the use of the road is unexplained. We disagree. It is undisputed that Theodore and the Brechbill family traveled on the road for no other purpose than to reach their property. The use of the easement is therefore not unexplained.

¶29 The Appellants' final contention is that the District Court erred in finding that the Lewises had established a prescriptive easement against their own family members. This Court stated in *Cope v. Cope* (1971), 158 Mont. 388, 391-92, 493 P.2d 336, 338, that "members of a family may not acquire an easement by prescription against each other in the absence of a showing of a clear, positive, and continued disclaimer and disavowal of title." In *Cope*, the plaintiff was denied an easement over his uncle's property, mainly because the plaintiff was unable to prove the existence of hostility, as various parties to the case had regularly requested permission to use the easement. Additionally, permissive use of the easement was specially given to family members and their guests, as other persons traveling on the road were charged a fee for its use. *Cope*, 158 Mont. at 393-95, 493 P.2d at 339-40. The Appellants allege that in the instant case, as with the family in *Cope*, the Lewises failed to prove the level of hostility necessary to establish a prescriptive easement claim against family members.

¶30 We distinguish the facts of *Cope* from the case at bar. In *Cope*, we concluded that the

14

parties to the case, the Cope family, had regularly requested and received permission to use the disputed easement. *Cope*, 158 Mont. at 393, 493 P.2d at 339. However, as we stated above, there is no evidence in the instant case that Theodore ever requested or received any type of permission from the Appellants to use the disputed road. There is likewise no evidence that Theodore received permission from the Brechbills to use the road to cross the Brechbill family property. Furthermore, while the *Pentz* decision granted Theodore and Octavo the right to cross the Pentz property, Theodore was never granted the right to cross the Brechbill property to reach his own property. Therefore, the Brechbills were clearly aware that Theodore was using the road to reach his own property, independent of any right granted to him by *Pentz*.

¶31     *Cope* is further distinguishable from the instant case based upon the Brechbills' failure to regulate Theodore's actions. In *Cope,* family members refused to permit unlimited access to the disputed road, while in the case before us, the Brechbills declined to place any such regulations on Theodore's use of the road. That is, despite the limited rights granted to Theodore in *Pentz*, there is no evidence that Octavo or the other Brechbills ever attempted to terminate or control Theodore's use of the disputed road.

¶32     Finally, the District Court examined the pleadings from *Pentz* and found that Theodore had established an easement against his family members. The District Court noted that both Octavo and Theodore asserted, in 1946, that *they* had a right of way across Pentz's land, referring to themselves in the plural form throughout the pleadings. The pleadings from *Pentz* indicate that Octavo and Theodore viewed themselves as separate landowners, and

15

indeed they were, as Theodore did not acquire any interest in the Brechbill family property until Octavo's death in 1973. Therefore, we conclude that a clear and positive disclaimer and disavowal of title was demonstrated by Octavo as to her son Theodore. Further, this disclaimer and disavowal of title was continuous, as Octavo retained absolute ownership of the Brechbill family property from 1912 to 1973, only passing it to Theodore and his siblings at her death.

¶33 As such, Theodore's prescriptive use of the disputed road commenced in 1937, the year he acquired a portion of the Lewis property and began regularly using the road. In successive years, and until his death in 1995, Theodore's use of the disputed road was open and notorious, exclusive, continuous, uninterrupted, and adverse. Therefore, Theodore's use of the road established a prescriptive easement against the Appellants and their predecessors, as well as against his own family members on the Brechbill property. Accordingly, we hold that the District Court did not err in granting the Lewises a prescriptive easement over the properties of the Appellants.

¶34 For the foregoing reasons, the judgment of the District Court is affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART

16

Justice Jim Rice dissenting.

¶35 I respectfully dissent. Admittedly, the decision reached by the District Court, and affirmed here, appears to be an equitable one, given the longstanding use of the disputed road by the Brechbill family, who were Respondents' predecessors in interest. However, I do not believe the claim satisfies all of the elements required by our case law to establish a prescriptive easement, and therefore, I believe a different result is compelled. Specifically, exclusive use and adverse use were not established by the evidence.

¶36 The District Court stated in Finding of Fact #21 that "[i]t appears that [Theodore's] use which occurred between 1937 and 1992 was exclusive, i.e., not dependent upon Octavo's right." The Court confirms this determination in ¶ 20 of the Majority Opinion:

> The District Court examined the pleadings from *Pentz*, noting that Percy Pentz admitted, in his original complaint, that his property was subject to the rights of both Octavo and Theodore to travel across his property by way of the road. Pentz's admission was a concession that Theodore had a legal right, independent from Octavo's right, which was appurtenant to the former Brechbill property. Therefore, Theodore's right to use the road to cross the properties in dispute was an exclusive right. As such, we hold that Theodore's use of the disputed road satisfies the exclusivity element of the Lewises' prescriptive easement claim.

The conclusion that the *Pentz* litigation established a legal right in Theodore to use the disputed road which was independent from Octavo's right is, in my view, erroneous. Although Pentz had asserted that Theodore had a right to use the road, that assertion was premised entirely on Theodore's role as the manager of Octavo's property, and upon Octavo's ownership of the property. Pentz's complaint did not specifically address this distinction, but the proposed findings he submitted to the court did:

> That such rights [to the disputed road] as the defendants may have had in the said "old road" were appurtenant to the lands owned by the defendant, Octavo Brechbill. That the defendant, Theodore Brechbill, is the manager of the said lands owned by the defendant, Octavo Brechbill.

17

The *Pentz* court adopted this proposed finding as its own, and entered a decree concluding "[t]hat the defendant, Octavo Brechbill, is the owner of a permanent easement" over the disputed road. The judgment did not declare that Theodore was an owner of an easement resulting from the ownership of his own lands, which were not at issue in *Pentz*. Thus, Octavo's ownership of the easement and Theodore's employment by Octavo formed the basis of Theodore's right to use the disputed road. The Majority Opinion acknowledges as much when discussing the adverse use requirement, stating that the easement granted to Theodore over the Pentz property "was *based upon his family's interest in the former Brechbill property* . . . ." Majority Opinion, ¶ 25 (emphasis added). Outside Octavo's ownership of the Brechbill property, Theodore had no claim to the easement, and, because his own lands were not a subject of the litigation, his interest as established in the *Pentz* litigation was not independent. Consequently, that use was not exclusive, which requires a showing that "the right was exercised under a claim of right independently of others." *Lemont*, 269 Mont. at 184, 887 P.2d at 727.

¶37 The District Court's findings undermined its conclusion that Theodore's use was exclusive:

> The evidence indicates that Theodore Brechbill's use of the disputed road was either made pursuant to a claim of legal right his family had acquired, any appurtenant easement acquired by conveyance from Ida Fales, or by acquiescence of his mother or all of the above.

Finding of Fact #20, Order of July 6, 2001. The District Court later found that Theodore had not acquired an easement in the conveyance from Fales, thus leaving either "a claim of legal right his family had acquired" or "acquiescence of his mother" as the possible sources of his interest. As already seen, the "family right" was premised upon Octavo's ownership interest,

and not Theodore's ownership interest. Therefore, neither of these remaining alternatives constituted an independent interest necessary to establish Theodore's use as exclusive.

¶38 Absent a showing of "exclusive" use, as our law defines that requirement, Theodore's claim must fail.

¶39 Though not necessary for resolution of this matter, I would also find that there was insufficient evidence to demonstrate adverse use by Theodore. I acknowledge that there is evidence in the record consistent with a finding of adversity, but it is very minimal. In finding sufficient evidence to support adverse use, the Court relies on the evidence it found in support of the element of open and notorious, that being Theodore's long time use, and his maintenance of the road. *See* Majority Opinion, ¶¶ 27 and 18. However, as the Court acknowledges, long time use alone does not establish adversity; and while maintenance can be evidence of adverse use, maintenance provided by Theodore in this case could also be consistent with his right to use the road as manager of Octavo's property, and thus, non-adversarial. The testimony in the record seems to be either ambiguous on this point, or supportive of a conclusion that Theodore was providing maintenance in support of Octavo's interest, with the exception of brief testimony offered by Frank Brechbill:

> Q. Did [Theodore] also do maintenance from that part of the roadway that went beyond your home place and on up to his property, or the Fales' property?
>
> A. Yes, he did.
>
> Q. Did you see him do that?
>
> A. Yes, I did.

In analyzing this issue, it should be remembered that maintenance of a disputed road does not necessarily constitute *prima facie* evidence of adverse use. *See Cope*, 158 Mont. at 394-95, 493 P.2d at 340. It should be further remembered that this is a case of alleged prescriptive use within a family, which, in accordance with *Cope*, requires sufficient proof to overcome an inference that the use was non-adversarial: "[A] family relationship existing between the litigants creates an inference in itself that the use in controversy *was permissive*." *Cope*, 158 Mont. at 395, 493 P.2d at 340 (emphasis added).

¶40 The District Court and this Court have only partially applied *Cope*. It is correct that *Cope* requires a clear, positive and continued disclaimer and disavowal of title to be demonstrated within the family. However, that showing is required in addition to proof of the ordinary elements of prescriptive easement, and must also rebut the inference that the family use at issue is permissive. Given the minimal evidence of maintenance unrelated to Octavo's interest, I would conclude that the element of adversity was not proven at trial.

¶41 I would reverse the judgment of the District Court.


/S/ JIM RICE