No. 02-568

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 94

POUWEL and MIRIAM GELDERLOOS, Husband and Wife, as Joint Tenants, as to an undivided 74.2% interest; WAYNE C. MANSAW and CATHERINE O. MANSAW, Husband and Wife, as to an undivided 8.05% interest; JACOB MEIJER and IRENE MEIJER, Husband and Wife, as Joint Tenants, as to an undivided 9.7% interest; and LINDA L. ULRICH, as to an interest in the Gelderloos undivided interest according to an unrecorded Contract for Deed, all as Tenants in Common,

        Plaintiffs and Respondents,

    v.

ROXANNE DUKE, an individual as to an undivided 8.05% interest, as a Tenant in Common; and DAVID MacDONALD and CHERYL MacDONALD, Husband and Wife,

        Defendants and Respondents,

and ROGER ZEMAN, an individual,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
                In and for the County of Park, Cause No. DV 2000-105
                The Honorable Wm. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Joseph T. Swindlehurst, Esq., Huppert & Swindlehurst, P.C., Livingston, Montana (for Roger Zeman)

        For Respondents:

                Thomas R. Anacker, Esq., Anacker Law Office, Bozeman, Montana
                David A. Duke, Esq., Duke Law Firm, Billings, Montana (for Roxanne Duke)

                         Submitted on Briefs:  February 20, 2003

                              Decided:  April 14, 2004

Filed:

                            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Defendant Roger Zeman appeals the District Court's judgment in which Defendant Roxanne Duke and Plaintiffs Wayne C. and Catherine O. Mansaw were granted a prescriptive easement for a road across his property, and the Mansaws were also granted a prescriptive easement for the encroachment of the eaves of their residence. We reverse.

## ISSUES

¶2     1. Did the District Court err when it concluded that a prescriptive easement for road access to the Duke and Mansaw properties existed across Zeman's property?

¶3     2. Did the District Court err when it concluded that a prescriptive easement existed for the Mansaw residence's eaves where they overhang the Zeman property?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     This case began as a partition action between the occupants of a nearly 31-acre tract of land known as Parcel 33, Certificate of Survey No. 615A, located in Glastonbury Subdivision in Park County. Glastonbury is a residential subdivision developed by Church Universal and Triumphant, and owned by the related corporation Royal Teton, Ltd., dba Community of Glastonbury. Prospective property purchasers were required to be members of the church at the times relevant to this proceeding, and the church, through the Community of Glastonbury Project Review Committee, managed the property and required applications and approval processes for every improvement made to the land. Throughout this Opinion, we will refer to the church and its related property management entities collectively as CUT.

2

¶5    In 1984, Linda Ulrich purchased a 99-year lease in Parcel 33 from CUT.  In September 1986, she sold a portion of her interest to Roxanne Duke, which was defined between them as a more or less five-acre tract in the northeastern corner of Parcel 33.  Duke then divided her tract and sold the northern half of it to the MacDonalds in December 1989, and granted the MacDonalds an access easement across her retained portion of Parcel 33.  The MacDonalds sold their interest to the Mansaws in 1991.  Additional subdivisions and transfers took place among other parties elsewhere on Parcel 33, but they are not pertinent to this Opinion and will not be detailed here.

¶6    In 1993, the tenants of Parcel 33 were "grandfathered in as tenants in common" by Park County.  The tenants decided that a tenancy in common was more financially feasible than subdividing the parcel.  Eventually, the tenants arranged to purchase Parcel 33 in fee simple from CUT.  They received a general warranty deed for fee simple in October 1998.

¶7    While it is not clear from the record, it appears that a need to formalize the partition boundaries came about because of the upgrade of the estate in land from a lease to a fee simple.  Parcel 33 was examined, and a survey prepared dated September 8, 2000.  The survey not only set the inside boundaries of Parcel 33, but also revealed that both the private road known as "Centerline Drive," used by the Duke and Mansaw families to access their respective residences, and a corner of the Mansaw home, encroached upon Parcel 34, which shared a common boundary with the eastern boundary of Parcel 33.

¶8      A life estate in Parcel 34 had been purchased from CUT by Roger Zeman on June 1, 1983. Zeman lives in St. Louis, Missouri, and visited Parcel 34 a few times each year, but has never lived on the property. He upgraded to a fee simple title on November 19, 1998. In December 1999, Zeman received a survey document from Mansaw which showed that a portion of the Mansaw residence was located on Parcel 34. In August 2000, Mansaw sent Zeman a drawing which indicated that a portion of Centerline Drive was also on Parcel 34. In November 2000, Zeman was joined as a defendant in the underlying partition action pursuant to an amended complaint.

¶9      How the road and residence came to exist in their present locations is fairly complicated. While the record is not entirely clear, it appears that the first improvements made to this portion of Parcel 33 were a well and access road leading to that well. The original access road was contained within the boundaries of Parcel 33.

¶10      In early 1987, Duke and her husband David Duke applied to CUT for permission to place a mobile home on Parcel 33 and to build an access road to the homesite. The drawing and map submitted by the Dukes with the application show a proposed road which would begin on Parcel 34 and then veer to the west onto Parcel 33. On April 28, 1987, CUT responded to the Dukes' application to build an access road by stating, along with other conditions, that the Dukes would have to get a written easement from Zeman.

¶11      On May 30, 1987, a member of CUT's Glastonbury Project Review Committee wrote a letter to the Dukes stating that CUT understood that the Dukes had chosen not to cross Parcel 34 with the access road, and requested confirmation. The Dukes responded with a

4

letter, dated June 23, 1987, in which David stated, "The road we have now does not cross Parcel #34, therefore no road easement is needed from Roger Zeman. Attached is a map of the actual location of this road." David's map shows a road which runs parallel to the boundary between Parcels 33 and 34, and is entirely to the west of that boundary--beginning on Parcel 33 and never veering onto Parcel 34 for the length of the road.

¶12 However, on July 12, 1987, David approached Zeman and asked if he could, if necessary, move the access road onto Zeman's property by a few feet for a length of fifteen feet in order to avoid a steep hillside. He also asked Zeman for permission to install his septic field ten feet from the boundary rather than fifty feet as required by Glastonbury regulations. Zeman agreed and David brought him two agreements to sign. On the agreement concerning the road, the document said "fifty feet," instead of the "fifteen feet" they had discussed, but Zeman thought this distance seemed "reasonable" and signed the documents.

¶13 When the Dukes installed their mobile home, they placed it in the middle of the well access road. As a result, when the Dukes sold the northern half of the property to the MacDonalds in 1989, residents and visitors drove up the access road to the Dukes' mobile home, and then veered to the east of the Duke residence, closer to the boundary line, but still within Parcel 33, and then veered somewhat to the west again, continuing north to the MacDonald homesite. At some point, David asked the MacDonalds not to drive near the Duke residence and requested that they drive further to the east. The MacDonalds and

5

Dukes and their guests then began to cross onto Parcel 34 when accessing the northern part of the MacDonald and Duke portions of Parcel 33.

¶14    In 1990, when the MacDonalds filed an application with CUT to place a mobile home on their portion of Parcel 33, the map which they submitted to the review committee also showed Centerline Drive to be completely within the boundaries of Parcel 33. In 1991, the MacDonalds sold their interest in Parcel 33 to the Mansaws. At some point after the purchase but prior to the survey, the Mansaws improved Centerline Drive, including the portion which ran across Parcel 34.

¶15    Centerline Drive, as constructed, did not ultimately encroach upon Zeman's property at the location which had been discussed with David, nor at the location the Dukes had proposed in their earlier application to CUT. It was at a different point along the road in which it crossed onto Parcel 34, and it traversed Parcel 34 approximately 33 feet inside of the boundary for a distance of 290 feet.

¶16    Once the MacDonalds occupied their portion of Parcel 33, they leveled a building area and placed a 14' by 70' mobile home upon it. In 1993, the Mansaws moved into a residence which they had constructed upon this same building pad after the removal of the MacDonald's mobile home. However, the Mansaw residence was larger in size and extended further to the east than the MacDonald's mobile home had done. The survey dated September 8, 2000, indicated that a corner of the Mansaw residence and concomitant improvements extended over the boundary into Parcel 34.

¶17    In the Plaintiff's Amended Complaint dated November 30, 2000, Mansaw averred, "a corner of the Mansaw residence is located across the common property boundary line between Parcel No.'s 33 and 34." At trial, Wayne Mansaw testified that "the eaves and maybe a foot or two more" of the residence sits on Parcel 34.

¶18    In its Findings of Fact, Conclusions of Law, and Order, the District Court found that a portion of Centerline Drive passes through Parcel 34 approximately 34 feet east of the boundary for a distance of 290 feet. It further found that Centerline Drive had been used openly, notoriously, exclusively, adversely, continuously, and uninterruptedly by the Dukes since 1987, and by the MacDonalds and Mansaws since 1989.

¶19    Concerning the Mansaw residence, the District Court found that the Mansaws had used the building pad created by the MacDonalds for their mobile home. It further found that part of the roof of the Mansaw residence, plus a yard, fencing, and landscaping, encroached on Parcel 34. The District Court relied on David MacDonald's testimony that the surveyor drawing of the encroachment showed that the roof was overhanging the common property line, but that MacDonald believed the Mansaws' foundation corner was inside Parcel 33. The District Court went on to find that while the roof encroachment had existed openly, notoriously, exclusively, adversely, continuously, and uninterruptedly for a period of time exceeding five years, the plaintiffs had not proven the same as to their fencing, yard, and landscaping improvements.

¶20    The District Court concluded that the Plaintiffs and Duke had established a prescriptive easement for the portion of Centerline Drive which crosses Parcel 34 and further

7

concluded that the Mansaws had established a prescriptive easement for the overhang of their roof across the common boundary with Parcel 34. The District Court ordered the fencing, yard, and landscaping improvements, where they encroached upon Parcel 34, to be removed, and the Mansaws complied.

¶21 From this Order and corresponding Judgment, Zeman timely appeals.

## STANDARD OF REVIEW

¶22 We review a district court's findings of fact to ascertain whether they are clearly erroneous. *Brumit v. Lewis*, 2002 MT 346, ¶ 12, 313 Mont. 332, ¶ 12, 61 P.3d 138, ¶ 12. (Citations omitted.) A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed. *Brumit*, ¶ 12. (Citations omitted.) The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *Brumit*, ¶ 12. (Citations omitted.)

**DISCUSSION**

**ISSUE ONE**

¶23     1. Did the District Court err when it concluded that a prescriptive easement for road access to the Duke and Mansaw properties existed across Zeman's property?

¶24     Zeman argues that the District Court erred in finding that a prescriptive easement existed for the portion of Centerline Drive that crosses Parcel 34 because Zeman was reasonably unaware of the encroachment, and confusion existed prior to the 2000 survey as to the exact location of the boundary line between Parcels 33 and 34. Thus, he claims the use of Centerline Drive across Parcel 34 was not "open and notorious" as required for a prescriptive easement. He also argues that there is a lack of evidence to establish that the use of the road was "hostile," because the Parcel 33 tenants believed they were on their own property when using Centerline Drive.

¶25     He further argues that the parties failed to prove by clear and convincing evidence that Centerline Drive existed in its present condition for the full statutory period, as some of the Plaintiffs testified that Centerline Drive had been widened in order to comply with Park County subdivision requirements, that MacDonald denied improving the road at the location where it traversed Parcel 34, and that Mansaw testified that he improved the road on Parcel 34 at some point after he purchased the MacDonalds' interest but did not testify as to when he made those improvements. Without clear and convincing evidence to prove all elements of a prescriptive easement, Zeman argues, the District Court erred when it concluded that a

9

prescriptive easement existed for the portion of Centerline Drive which runs across Parcel 34.

¶26 The Mansaws argue that Centerline Drive has been utilized by the MacDonalds and Mansaws continuously and uninterruptedly since 1987 without Zeman's permission. They maintain that the use of Centerline Drive was "hostile" in the context of the element of "open and notorious," as hostility refers to the use made of the owners' property rather than the mindset of the person making the prescriptive use. The Mansaws also detail various ways in which Zeman should have been aware of the encroachment of Centerline Drive upon Parcel 34.

¶27 Duke argues that Zeman's assertion that the use of Centerline Drive was not open and notorious is misplaced. She notes, "The term 'open and notorious use' is defined as a 'distinct and positive assertion of a right hostile to the rights of the owner and brought to the attention of the owner.'" *Amerimont, Inc. v. Gannett* (1996), 278 Mont. 314, 323, 924 P.2d 1326, 1333.

¶28 We note that there is abundant confusion in the record as to the basic facts of this case. Our review of the record shows a great deal of contradictory testimony and a lack of clarity surrounding many of the events and the dates on which they occurred. It is of no surprise that the District Court was unable, in some findings and conclusions, to reach consistent results on the basis of the record before it.

¶29 From the briefs and the record on appeal, it appears to us that the Mansaws and Duke overlook that, though Zeman was a life tenant, the actual "owner" of the property at the time

10

pertinent to the purported establishment of the prescriptive easement was CUT, which held the fee simple interest in both Parcels 33 and 34 until late 1998.[1] Thus, as Duke points out via *Amerimont*, in order for the use of Centerline Drive to be "open and notorious" it would have to be "open and notorious" to the property owner, CUT. Several of the exhibits introduced at trial--such as the maps submitted with the Dukes', MacDonalds', and Mansaws' building applications--show the opposite to be the case. The Centerline Drive users consistently represented to CUT that Centerline Drive was located entirely upon Parcel 33 although the survey later proved that this was not the case.

¶30     In his brief, Zeman points out that the Mansaw and MacDonald applications to CUT for approval to build homes on Parcel 33 include a map which represents Centerline Drive as being within the bounds of Parcel 33 in its entirety. Furthermore, the Dukes submitted a map showing all of Centerline Drive within the bounds of Parcel 33 when they applied for permission to sell part of their interest in Parcel 33 to the MacDonalds. David Duke also wrote a letter to CUT in 1987 in which he stated that "the road we have now does not cross Parcel No. 34."

¶31     However, in its Finding of Fact 10, the District Court stated, "The MacDonald application to [CUT] has a map attached showing the direction of the access road to the MacDonald homesite as crossing onto Parcel 34. See Roger Zeman Trial Exhibit O." Our

---

[1]  Although Parcels 33 and 34 had a shared ownership--with the fee simple interest of both parcels owned by CUT--during the time in which the prescriptive easement purportedly ripened, the parties have not argued or briefed this issue, and thus we shall not discuss unity of title in this Opinion.

11

review of the record shows this to be in error. The map enclosed with Exhibit O clearly depicts Centerline Drive running parallel to the boundary of Parcels 33 and 34, and completely within the Parcel 33 boundary. It does not cross onto Parcel 34 on that drawing, or on the drawings submitted to CUT as part of the "notice of proposed sale" to the MacDonalds in approximately 1989, or with Mansaws' 1993 application to build their residence, in which Centerline Drive, drawn as being located entirely on Parcel 33, is labeled "existing driveway." CUT used these documents to approve improvements until title passed in 1998, and therefore as owner was actively involved and actively misled.

¶32     The concealment from CUT of the actual location of the roadway appears to defeat the respondents' claim that the "open and notorious" use of Centerline Drive was "brought to the attention of the owner," as the clear language of *Amerimont* requires, as early as 1987 and 1989.

¶33     The elements of a prescriptive easement must be proven by clear and convincing evidence. *Wareing v. Schreckendgust* (1996), 280 Mont. 196, 206, 930 P.2d 37, 43. Given that the record is full of contradictory assertions and findings, and given that the actual location of the roadway was concealed from CUT and Zeman by way of maps and misrepresentations as to its true location, we conclude that the record does not come close to establishing the elements of hostility or open and notorious use by clear and convincing evidence. Thus, we conclude the District Court erred when it found that Centerline Drive had been used openly and notoriously by the Dukes since 1987, and by the MacDonalds and Mansaws since 1989.

12

¶34 Because the District Court erred in key findings concerning the representations made by the Dukes, MacDonalds, and Mansaws as to the location of Centerline Drive, we further conclude that the District Court erred when it concluded that the Dukes, MacDonalds, and Mansaws had established a prescriptive easement for the portion of Centerline Drive which encroaches upon Parcel 34, as such use by the parties did not rise to the level of "open and notorious" as would be required to establish a prescriptive easement under Montana law.

## ISSUE TWO

¶35 2. Did the District Court err when it concluded that a prescriptive easement existed for the Mansaw residence's eaves where they overhang the Zeman property?

¶36 Zeman argues that the District Court's finding that only the eaves of the Mansaw residence overhang Parcel 34--as opposed to the eave overhang and an encroachment of the foundation itself upon the land of Parcel 34--is in error. Zeman argues that the evidence presented at trial clearly demonstrated the corner of the Mansaw residence--and not just the eave overhang--encroaches Parcel 34, and that the Mansaws would have had to prove adverse possession in order to lay claim to the ground upon which the corner of their residence stands. In the alternative, Zeman argues that the Mansaws' claim to a prescriptive easement would fail for the same reason that the District Court erred in concluding that a prescriptive easement exists for Centerline Drive.

¶37 Zeman details the parties' testimony regarding the corner of the Mansaw residence, noting that Wayne Mansaw himself testified that "the eaves and maybe a foot or two more" of the residence encroached upon Parcel 34, and that "the corner of my house is on Roger

13

Zeman's property." Zeman argues that the only testimony which supports the District Court's finding that the foundation of the residence does not cross the boundary was offered by David MacDonald, who opined that the "slanted lines" on the survey indicated the eaves, and that the foundation was located somewhere inside of the eave line. Zeman argues that MacDonald had no firsthand knowledge of the depth of the eaves of the Mansaw residence and how the residence sat in relation to the boundary, and that he was merely speculating.

¶38 A review of the record confirms, as Zeman claims, that all the testimony except for MacDonald's statement of his interpretation of the survey drawing, indicates that the actual corner of the Mansaw residence rests upon Parcel 34. In the Mansaw's Respondent's Brief, they concede that a "corner of the Mansaw house is located over Parcel No. 34," and further state that, "[A] building contractor testified that the cross hatched marks shown [on the survey] represented the 'eave line' . . . was extending over onto Parcel 34." The brief does not actually assert that the contractor's remarks were accurate, and states elsewhere, "The corner of the Mansaw house encroaches over the common boundary line. . . ." In addition, in their Amended Complaint, the Mansaws conceded that "a corner of the Mansaw residence is located across the common property boundary line. . . ." As the finder of fact, it is the District Court's prerogative to weigh the evidence and make its findings accordingly. However, there must be substantial credible evidence to support the District Court's findings. Here, on this issue, we do not find the existence of such evidence.

¶39    Zeman points out that the Mansaws could not prevail on a claim of adverse possession to obtain title to the ground underneath the encroaching corner of their residence under Montana law, which requires the party to have paid taxes on the land for five consecutive years. Section 70-19-411, MCA. Thus, he asserts that the District Court "'stretched' the law and testimony in order to avoid the difficult decision of ordering Mansaws to move their house."

¶40    In sum, the evidence supports Zeman's contention that both the eaves and the foundation of the Mansaw residence protrude onto his property. Zeman further argues that the District Court erred in finding a prescriptive easement for the eaves, and we agree. However, he adds in his brief on appeal, and apparently testified at trial, that he was willing to "work on something about the house encroachment," if Centerline Drive were moved off of Parcel 34.

¶41    As pointed out above, the District Court ordered the fencing, yard, and landscaping improvements that encroached upon the Zeman property to be removed, and the Mansaws complied. *Supra*, ¶ 20. The question now is whether the house must be moved as well, due to the encroachments. We could at this stage remand the question to the District Court for resolution. However, under this Court's equitable powers, we may resolve this issue without further delay. *Nimmick v. Hart* (1991), 248 Mont. 1, 13, 808 P.2d 481, 488. Under these circumstances, and given Zeman's stated willingness to "work something out," we conclude that ordering Mansaws to tear down and move their house would, in light of the *de minimis* encroachment of the foundation, be extreme. Accordingly, while we conclude that the

15

District Court erred in concluding that a prescriptive easement existed for the eaves of the Mansaw residence, and in failing to recognize that a portion of the foundation--as well as the eaves--extended from Parcel 33 into Parcel 34, we decline to order the house to be moved from its foundation.

## CONCLUSION

¶42    We reverse the District Court's finding of a prescriptive easement for the portion of Centerline Drive which runs across Parcel 34, and remand for further relief consistent with this determination.  We also reverse the District Court's conclusion that a prescriptive easement exists for the eaves of the Mansaw residence, and remand for further proceedings not inconsistent with this Opinion.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ JIM RICE

16